[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This case is before the Court on the appeal of Petitioners — State of Rhode Island ("State"); the Department of Children, Youth and Families ("DCYF"); and the Department of Human Services ("DHS" or collectively, "Petitioners") — appeal of a April 6, 2004 decision of the Respondent State Labor Board ("Board"). In that decision, the Board ruled that approximately 1,300 Family Home Day Care Providers ("providers") are state employees.[1] The Board has ordered that an election be held to determine whether these providers wish to unionize so as to bargain with the State. On April 19, 2004, this Court issued a stay prohibiting said election. Petitioners are moving to vacate the Board's decision. Respondents — the Board and the New England Health Care Employees Union, District 1199, SEIU, AFL-CIO ("Union") — object to Petitioners' motion.
 Facts
On October 3, 2003, the Employees International Union, District 1199 filed a petition with the Rhode Island State Labor Relations Board, seeking to represent approximately 1300 certified home day care providers. On October 27, 2003, the Board's Investigative Agent conducted an informal hearing on the petition which was attended by representatives of both the Union and the State. The State took the position that it was not the employer of home day care providers and therefore objected to the formation of the bargaining unit. Formal hearings were conducted on January 8, 2004, January 13, 2004 and January 27, 2004. The parties presented numerous documents and the testimony of three witnesses: (1) Ms. Reeva Sullivan Murphy, the Child Care Administrator for the Department of Human Services; (2) Ms. Joanne Flodin, the Licensing and Monitoring Supervisor for the Department of Children, Youth and Families; and (3) Mr. Anthony A. Bucci, Personnel Administrator for the State of Rhode Island. In addition to presenting the documentary evidence and testimony of the witnesses, the parties also submitted voluminous briefs with appendices in support of their respective positions.
On April 6, 2004, the Board rendered its decision, ruling that home day care providers are state employees and have the option of forming a bargaining unit. In reaching its decision, the Board first looked to the Rhode Island State Labor Relations Act and G.L. 1956 § 36-11-1, the statute governing the right to organize for bargaining representatives, for statutory guidance. Finding that neither the Labor Relations Act nor Title 36 of the Rhode Island General Laws provided guidance as to the status of home day care providers, the Board turned to case law to determine whether home day care providers are state employees or independent contractors for the purposes of collective bargaining under the State Labor Relations Act. Guided by federal case law, the Board considered thirteen factors that have been developed in analyzing employment relationships. The Board found that the State's right to control providers, the skill required of providers, the location of the work, the state's right to assign additional projects to providers, the method of payment, the providers' role in hiring and paying assistants, the providers' role in offering state services, and the provision for employee benefits — all supported an employer-employee relationship.
In its decision, the Board also addressed the State's contention that the Board lacks jurisdiction to hear this matter because the creation of state employee positions is controlled by statute and a decision that providers are state employees would violate the FTE cap. The Board found the State's argument to be misplaced and concluded that the fact that there is no written or recognized classification of "Family Day Care Provider" set forth in the State's personnel system is not dispositive. The Board reasoned that any violations of the FTE cap and personnel regulations were a result of the State's treatment of day care providers as state employees and the State's actions superceded any FTE cap or regulations in existence. In response, the State, pursuant to the Administrative Procedures Act, has filed an appeal of the Board's decision with this Court. Following a lengthy stay of the proceedings, counsel submitted supplemental memoranda with the Court and requested oral argument on the matter which was heard on November 7, 2005.
 Standard of Review
When considering an administrative appeal pursuant to G.L. 1956 §42-35-15, the Superior Court must apply a limited standard of review.Mine Safety Appliances Co. v. Berry, 620 A.2d 1255, 1259 (R.I. 1993). Such a review is "limited to an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision." Johnston Ambulatory Surgical Associates, Ltd. v.Nolan, 755 A.2d 799, 805 (R.I. 2000) (quoting Barrington School Committeev. Rhode Island State Labor Relations Board, 608 A.2d 1126, 1138 (R.I. 1992)). This Court "`may not, on questions of fact, substitute its judgment for that of the agency whose action is under review, even in a case in which the court `might be inclined to view the evidence differently and draw inferences different from those of the agency.'"Johnston Ambulatory Surgical Associates, Ltd., 755 A.2d at 805 (quotingRhode Island Public Telecommunications Authority v. Rhode Island StateLabor Relations Board, 650 A.2d 479, 485 (R.I. 1994) (internal citation omitted)). This Court is required to uphold the agency's decision if there is competent evidence in the record to support it. BarringtonSchool Committee, 608 A.2d at 1138. "Legally competent evidence is `relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance.'" Arnold v. Department of Labor and Training, Boardof Review, 822 A.2d 164, 167 (R.I. 2003) (citing Rhode Island Temps,Inc. v. Department of Labor and Training, Board of Review, 749 A.2d 1121,1125 (R.I. 2000) (quoting Center for Behavioral Health, RI, Inc. v.Barros, 710 A.2d 680, 684 (R.I. 1998))). This Court's limited review, however, is not merely a rubber stamp for agency action and when appropriate, it may
 "`reverse, modify, or remand the agency's decision if the decision is violative of constitutional or statutory provisions, is in excess of the statutory authority of the agency, is made upon unlawful procedure, is affected by other errors of law, is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record, or is arbitrary or capricious and is therefore characterized by an abuse of discretion.'"
Johnston Ambulatory Surgical Associates, Ltd.,755 A.2d at 805 (quoting Barrington School Committee,608 A.2d at 1138 (citing R.I. Gen. Laws § 42-35-15(g))).
 Argument
On appeal, the State argues that the Board misconstrued the issue as being a question of whether providers are employees or independent contractors. It is the State's position that providers are neither employees nor independent contractors, but rather individuals who must meet regulatory requirements in order to conduct their business. Moreover, the State maintains that the Board lacked jurisdiction to hear the matter because the creation of state employee positions is controlled by statute and under Rhode Island law, providers are not state employees.
Conversely, the Union argues that the Board's decision is entitled to deference and is supported by numerous facts. In support of its position, the Union notes that the State (1) controls many aspects of providers' work regime, (2) determines the rate of compensation for providers who work for DHS, (3) requires that providers submit an application and sign an agreement to work for DHS, (4) provides health insurance for eligible providers, (5) informs interested applicants how to become a provider, (6) holds an orientation at which it distributes application packets to interested applicants, (7) has unfettered access to providers' homes during working hours, (8) requires providers to maintain detailed files for each child for inspection by the state, (9) monitors and reviews providers' performances, and (10) uses providers to fulfill the State's responsibilities. Additionally, the Union contends that the Board's decision is consistent with the purpose of the State Labor Relations Act and the changing nature of common law.
 Jurisdiction
It is well settled under Rhode Island law that "when the language of a statute is clear and unambiguous, [the Court] must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." State v. Oliveira, No. 2000-470-M.P., slip op. at 12 (R.I. Aug. 5, 2005) (quoting State v. DiCicco,707 A.2d 251, 253 (R.I. 1998)). "Moreover, when [the court] examine[s] an unambiguous statute, `there is no room for statutory construction and [the court] must apply the statute as written.'" Id. (quoting DiCicco,707 A.2d at 253).
While the Board did not err in its finding that the Rhode Island State Labor Relations Act and § 36-11-1 do not lend guidance as to whether or not home day care providers are state employees, section 42-72.1-2(10) of the Rhode Island General Laws defines a Family Day Care Home as ". . . any home other than the child's home in which child day care . . . is offered at the same time to four (4) or more children who are not relatives of the care giver." Section (5) of that law defines "child day care" as "daily care and/or supervision offered commercially to the public for any part of a twenty-four (24) hour day to children away from their homes." Based on the express language of § 42-72.1-2, it is apparent to this Court that family day care home providers are defined as commercial enterprises and are neither considered state employees nor independent contractors under Rhode Island statutory law. Additionally, the Rhode Island Supreme Court recently held that a Family Day Care Home is a business enterprise and can be held in violation of a restrictive covenant. In Martinelliv. Little Angels Day Care, 847 A.2d 838, 844 (R.I. 2004), our Supreme Court stated that ". . . there is no question the home also functions as a for profit business to which a fee is paid for the care of children, and where vehicles enter and exit the area twice daily to pick up and drop off children for this care." The Court articulated that while
 ". . . actions by the Legislature should be construed as encouraging and favoring the unencumbered location of child-care homes throughout the state . . . we must also realize that the Legislature has enacted no provisions voiding any covenants that prohibit businesses, including family day care homes. The restrictive covenant affecting [the] properties precludes the operation of the family day care home in question. It is a business in contravention of the unambiguous terms of limitation in the covenant." Id.
In reaching its decision, the Board found that it had jurisdiction to hear this matter because it could decide if home daycare providers were state employees based on the facts and evidence, despite the lack of any written or adopted classification under Rhode Island law. However, our Supreme Court has cautioned that "[n]o state official by administrative action can affect the substantive rights of parties as they have been set forth by an affirmative act of the general assembly." Little v. Conflictof Interest Commission of Rhode Island, 121 R.I. 232, 236, 397 A.2d 884,887 (1979). The flaw in the Board's reasoning is that it fails to take into account that there is a specific mandatory statutory scheme for creating state employee classifications. This process in summary requires the following: 1) a recommendation from the Personnel Administrator to the Director of the Department of Administration, either after a request from another department director or on his own initiative, followed by, 2) a public hearing if the Director of Administration approves of the recommendation of the Personnel Director, followed by, 3) a recommendation from the Director of the Department of Administration to the Governor, followed by 4) approval by the Governor. Additionally, the Budget Officer must approve all State employee positions. The Rhode Island Supreme Court has held that administrative agencies are bound by statutory schemes and a decision or award concerning State employees is invalid if the decision or award contravenes a statutory scheme. SeeDepartment of Corrections v. Rhode Island State Labor Relations Board,703 A.2d 1095, 1097 (R.I. 1997) (". . . a practice of a board or agency cannot overcome or negate a statutory imperative"); State of Rhode Islandv. R.I. Alliance of Social Service Employees, Local 580, SEIU,747 A.2d 465, 69 (R.I. 2000) (". . . neither a department of state government nor a union of its employees . . . can agree to relieve the parties . . . of their obligation to comply with applicable state law . . .").
Based on the evidence presented to the Board, it is evident to this Court that providers are not and have never been subject to the mandatory statutory scheme for creating State employee positions. Mr. Bucci, the Personnel Administrator, testified that none of the aforementioned statutory requirements has been followed with respect to home day care providers. Mr. Bucci explained that he does not participate in the selection or disciplining of providers, and he is not involved when a provider chooses to close temporarily because of an absence, functions in which he participates as to state employees. Furthermore, it is undisputed that no classification entitled "Family Day Care Providers" exists in the State personnel system and that providers are not counted in the legislatively imposed FTE cap. Thus, it is clear that home day care providers do not fall within the definition of state employees under Rhode Island statutory law and have never followed the process that is set forth for state employees in §§ 36-4-9 through 36-4-14 of the Rhode Island General Laws.
With respect to statutory employment law, in State of Rhode Island v.Rhode Island Alliance of Social Services Employees, Legal 580, SEIU,747 A.2d 465 (R.I. 2000), the Rhode Island Supreme Court held that an arbitrator exceeded his authority when he disregarded the applicable terms of a Rhode Island statute. The statute at issue was G.L. 1956 §36-4-63, which precluded paid sick leave time from being counted as hours worked for purposes of computing a state employee's entitlement to overtime compensation. Despite this provision, the Department of Administration interpreted the statute to allow state employees to be paid overtime, rather than be penalized, for using sick leave before or after working the required overtime during the same work week. From November 1988 to February 1996, the Department of Human Services counted paid sick leave as hours worked toward completing a state employee's established work week schedule. DHS ceased making these payments in 1996 in response to an auditor's report concluding that the payment of overtime violated applicable statutory law, and the Union grieved DHS's decision. In finding that the arbitrator exceeded his authority in upholding the Union's grievance, our Supreme Court declared:
 "In sum our cases in this area all boil down to a fundamental proposition: applicable state employment law trumps contrary contract provisions, contrary practices of the parties, and contrary arbitration awards. Thus, if a statute contains or provides for nondelegable and/or nonmodifiable duties, rights, and/or obligations, then neither contractual provisions nor purported past practices nor arbitration awards that would alter those mandates are enforceable. For this reason, labor disputes and grievances that seek to modify applicable state law are not subject to arbitration because the arbitrator has no power to do so even if the parties to a CBA have agreed to such a modification or have conducted themselves in a way that contravenes what applicable state law requires." State v. Local 580, 747 A.2d at 469.
In the instant case, the Board concluded that home day care providers are already state employees based on the State's actions, irrespective of statutory limitations. However, as recognized by the Supreme Court's decision in Alliance of Social Services Employees, neither an arbitrator nor a Board possesses the authority to override a statute based upon a clearly erroneous interpretation or based upon past practices of the parties. As there can be no question that home day care providers are considered a commercial enterprise under statutory law and that there is a mandatory statutory scheme for state employees that has never been followed by home day care providers, it is clear to this Court that the Board must be reversed on the grounds that the Board did not have jurisdiction to hear this matter.
 Evidence before the Board
Assuming arguendo that the Board did have jurisdiction to hear this case, this Court finds that the Board's decision is clearly erroneous in light of the evidence before the Board. In reaching its decision, the Board applied the thirteen factor test, set forth by the United States Supreme Court in Community for CreativeNon-violence v. Reid, 490 U.S. 730, 751 (1989), to determine whether the providers are employees of the State.[2] At the outset, it must be noted that the Board may have erred in applying the Reid factors to the case at hand. The factors enumerated in Reid were set forth by the Supreme Court to help determine whether a "hiring party" exercises control over a "hired party" to the extent that the hired party is an "employee" rather than an "independent contractor." Id., 490 U.S. at 738-39. The word "hire" is defined as, "[t]o engage the labor or services of another for wages or other payment." Black'sLaw Dictionary 748 (8th ed. 2004).
In the instant action, there was no evidence before the Board that the home day care providers were ever "hired" by the State. The work relationship between the State and providers is initiated by those seeking to enter this field of endeavor, namely, the providers. The nature of this relationship is clearly distinguishable from the general common law agency relationship contemplated in Reid. The State does not engage the services of the home day care providers. Conversely, the evidence suggests that anyone can become a home day care worker, regardless of any action taken by the State, so long as he or she attends a three hour orientation and meets the criteria to obtain a license: the applicant must (1) be a home owner or receive permission from his or her landlord, (2) pass a criminal background check, (3) be at least 18 years of age,[3] and (4) be in good physical and mental health.
Nevertheless, assuming the Reid factors are applicable to the case at hand, the Board's decision is clearly erroneous in light of the evidence that was presented to it. Of the thirteen factors prescribed by the Court inReid, the hiring party's right to control the manner and means by which the product is accomplished appears to be the most heavily weighted.[4] Although the Board found that the State controls the manner and means of employment for home day care providers, the facts presented to the Board do not support that conclusion. In support of its determination, the Board noted that persons who wish to become providers must complete "an extensive employment application," which includes a criminal background check, and, once they are providers, they are subject to state regulations. However, the extensive application which the Board references is a "Family Day Care Home Licensing Application for Certification," as opposed to a form CS-14, the State form that applicants for State employment are required to complete. Additionally, providers do not fill out any of the other routine forms associated with State employment, and according to the testimony of Mr. Bucci, there are no personnel or disciplinary files kept by the Personnel Administrator for providers. Moreover, it is apparent to this Court that the fact that there is a requirement in the licensure application for criminal background checks is not indicative of state employment. A criminal records check is required for numerous employment positions, including those of registered nurses, prospective attorneys seeking admission to the Rhode Island Bar, private school teachers, and camp counselors, that do not fall exclusively within the scope of state employment.
In support of its determination that the State controls the manner of employment for providers, the Board also noted that providers must pass a fire and health inspection of the home and D.C.Y.F. must inspect the home, either on an announced or unannounced basis. The Board notes in its decision that "the Employer controls the work environment" because the providers' premises must be "safe, protected, and free from hazards" and "must be maintained in good repair and in a clean, sanitary, hazard-free condition." However, what the Board fails to acknowledge is that these requirements apply to all child care facilities, regardless of whether or not they involve state funding through DHS. These are basic regulations that exist to ensure the safety of children.
Furthermore, the freedom that providers have with respect to hiring demonstrates that the State does not control employment with respect to home day care providers. A provider unilaterally decides whether to hire assistants if the provider takes care of six or fewer children. If the provider voluntarily chooses to hire assistants, or, if the provider has seven or eight children, the provider unilaterally decides whom to hire as an assistant, how many to hire, how much to pay them, and the number of hours they will work. There are only three limitations imposed by the State when a provider decides to hire an assistant: the assistant must be over the age of eighteen, cannot have a contagious illness, and cannot have been convicted of crimes related to child abuse. Thus, it is clear to this Court that the evidence does not support the Board's finding that the State controls the manner and means of employment among home day care providers.[5]
Additionally, the majority of the remaining factors to be considered in evaluating whether an employer-employee relationship exists weigh heavily against such a relationship between the State and home day care providers. A provider's work is done at the provider's home with the provider's furnishings. The provider furnishes its own instrumentalities and tools. All of the work is performed at the provider's private residence, and the State does not have the right to assign any children to the provider. The provider unilaterally controls the hours and days of operation and may unilaterally change them at any time. The provider unilaterally decides when to take vacation, how much vacation time to take, and how often to take vacation. The provider decides whom to hire and how to pay assistants, the only restrictions being that the assistant be 18 years of age or older, not have a communicable disease, and not have child-related felony convictions. Providers do not receive state employee benefits, such as retirement benefits and longevity payments, with the exception that some providers receive health care benefits through a statutorily created program. Finally, the State is not in business with home day care providers, and there is no tax involvement by the State other than its duty to report to the IRS any funding forwarded to a provider through DHS.
Although the Court recognizes that home day care is a highly regulated industry, substantial regulation does not necessarily equate to the control required to create an employer/employee relationship between the State and anyone who chooses to become a provider. In In reAdvisory Opinion to the Governo, (Casino), 856 A.2d 320
(R.I. 2004), our Supreme Court stated that "control" is defined as "`power to or authority to manage, direct, superintend, restrict, regulate, govern, administer, or oversee. The ability to exercise a restraining or directing influence over something.'" Id. at 331 (citingBlack's Law Dictionary 329 (1990)). In contrast, "regulatory authority is merely the power to enforce conformance with a given set of rules." Id. Ultimately, the record indicates that the State does not have the authority to manage, direct and control the providers' everyday activities. Rather, it merely exercises its authority to enforce the providers' conformance within a given set of rules prescribed for the safety of children.
A careful and comprehensive review of the record and consideration of oral argument and the supplemental memoranda demonstrates that the State does not have an employer/employee relationship with home day care providers. Thus, even if the Board, assuming arguendo, did possess jurisdiction to hear this matter, its decision is clearly erroneous as there is no reliable, probative, and substantial evidence in the record to support the Board's decision that there is an employer/employee relationship between the State and home day care providers.
 Conclusion
The Board's decision offends any reasonable notion of orderly and responsible expansion of the State's workforce. The analysis relied upon by the Board, if accepted, may be applied to a myriad of groups that supply goods or services to the State. The umbrella of state employment would be jammed open by administrative fiat — rather than by considered action by the executive and legislative branches of government pursuant to law.
This Court finds that the Board's decision is in excess of its statutory authority. Consequently, this Court reverses the Board's decision holding that home day care providers are state employees.
Counsel shall submit the appropriate judgment for entry.
[1] The Board's decision was by a 4-3 majority. Notably, in addition to the written decision, a written dissent was also issued.
[2] The thirteen Reid factors are as follows: 1) The hiring party's right to control the manner and means by which the product is accomplished; 2) The particular skill required; 3) The source of instrumentalities and tools required to perform the function; 4) The location of the work; 5) The duration of the relationship between the parties; 6) Whether the hiring party has the right to assign additional projects to the hired party; 7) The extent of the hired party's discretion over when and how long to work; 8) The method of payment; 9) The hired party's role in hiring and paying assistants; 10) Whether the work is part of the regular business of the hiring party; 11) Whether the hiring party is in business; 12) The provision of employee benefits; and 13) The tax treatment of the hired party.
[3] One seeking to be licensed for a "Day Care Home" must be 18 years of age while one seeking to be licensed for a "Group Family Day Care Home" must be 21 years of age.
[4] Although the Reid Court stated that no one factor is determinative of an employer/employee relationship, "[u]nder the common law test an employer-employee relationship exists if the purported employer controls or has the right to control both the result to be accomplished and the `manner and means' by which the purported employee brings about that result." HiltonInternational Co. v. NLRB, 690 F.2d 318, 321 (2nd Cir. 1982) (citing Lorenz Schneider Co. v. NLRB, 517 F.2d 445, 451 (2nd Cir. 1975)). Additionally, in its decision, the Board notes that it accepts the common law agency test, which places greater emphasis on the first factor — the hiring party's right to control the manner and means by which the work is accomplished.
[5] In its supplemental memorandum, the Union argued that the case at hand is similar to Hunte v.Blumenthal, 680 A.2d 1231 (Conn. 1996), and, therefore, the Court should consider it persuasive on the issue of whether providers are state employees. In Blumenthal,
the Connecticut Supreme Court found that foster parents were employees of the State, rather than independent contractors. Id. at 1241. The facts of Blumenthal are distinguishable because, there, the commissioner of the DCYF is the guardian of the children placed in foster care and "has the authority to make day-to-day decisions concerning the activities of the foster child." Id. at 1235-36. Here, although the State regulates the home day care providers, it has no authority to make day-to-day decisions regarding the providers' activities.