STATE of Rhode Island

v.

RHODE ISLAND ALLIANCE OF SO-
CIAL SERVICES EMPLOYEES,
LOCAL 580, SEIU.

No. 98–244–Appeal.

Supreme Court of Rhode Island.

March 17, 2000.

Peter N. Dennehy, William E. Smith, Providence, for plaintiff.

Francis X. Flaherty, Warwick, for defendant.

Before WEISBERGER, C.J., and
LEDERBERG, BOURCIER,
FLANDERS, and GOLDBERG, JJ.

## OPINION

FLANDERS, Justice.

General Laws 1956 § 36–4–63 precludes paid–sick-leave time from being counted as hours worked for purposes of computing a state employee's entitlement to overtime compensation. It further provides that any collective bargaining agreement (CBA) or arbitration award to the contrary "shall be null and void."[1] In the case at bar, a CBA between the Rhode Island Alliance of Social Services Employees, Local 580 (union) and the State of Rhode Island conformed to state law in this respect by

providing that "hours which are paid for but not actually worked shall not be counted as hours worked in computing overtime compensation."

Notwithstanding these provisions, a former Department of Administration (DOA) official, Richard Wessels, prepared an interoffice memorandum in 1988 that interpreted § 36–4–63 to allow state employees to be paid overtime in such a manner that they would "not be penalized for the use of sick leave before or after working the required overtime during the same work week ***." As a result, from November 1988 to February 1996, at least one department of state government, the Department of Human Services (DHS)—and possibly others—counted paid-sick-leave time as

---

1. The relevant version of G.L.1956 § 36–4–63, as amended by P.L.1988, ch. 558, § 1, provided as follows:

   "**Sick leave and other leave—Effect of discharging upon overtime work and overtime compensation.**—(a) After an employee's discharge with pay of three (3) consecutive days of sick leave in any given calendar year, his or her appointing authority shall thereafter require a physician's certificate or other evidence satisfactory to the appointing authority in support of each and all other requests from that employee for sick leave and/or leaves of absence due to illness whether leave is with pay or without pay during the remainder of that calendar year. Sick leave is hereby defined to mean a necessary absence or absences from duty due to an employee's illness, injury, or exposure to contagious disease. In the event that the required evidence satisfactory to the appointing authority is not presented by the employee prior to or upon the conclusion of that leave, no payment of any compensation to which the employee would otherwise be entitled shall be made and the employee shall be considered for all purposes as having been absent without leave.

   "(b) *In any given pay period in the event that an employee discharges any sick leave or leave of a type referred to in subsection (a) of this section, either with pay or without pay, he or she shall be permitted to work overtime only after he or she has worked his or her full thirty-five (35) or forty (40) hours, whichever is appropriated for the job classification.* This subsection shall also apply to leave without pay which is taken by an employee for purposes other than those

   purposes referred to in subsection (a) of this section excluding, specifically, planned vacation days, personal days, and leave for death in employee's immediate family.

   "(c) Overtime, for purposes of this section, shall mean the performance of hours of work in any work week which are in excess of an employee's established work week schedule, or when requested by the employer. *Hours which are paid for but not actually worked* except planned vacation days, personal days, jury duty, and leave for death in the employee's immediate family *shall not be counted as hours worked nor shall they otherwise be used in computing overtime compensation.*

   "(d) The provisions of subsection (b) of this section shall not be applicable to employees in the nonstandard category.

   "(e) Notwithstanding other subsections of this section, an employee who is granted leave with or without pay for the purpose of fulfilling a military obligation shall be eligible to perform overtime work.

   "(f) *Notwithstanding the provisions of any other law, it shall be unlawful for any state agency or any person or persons acting on behalf of the agency, to agree to, or enter into any agreement including a collective bargaining agreement or any amendment, modification, extension, or replacement thereof, whether verbal or written, which contains provisions that are inconsistent with the provisions of this section and the inconsistent provisions shall be null and void, whether the provisions result from agreement or the award of an arbitrator or arbitration panel under the provisions of chapter 11 of this title.*" (Emphases added.)

hours worked toward completing a state government employee's established-work-week schedule. Consequently, DHS paid overtime to DHS employees who used paid-sick-leave time to satisfy all or a portion of their established-work-week schedule of hours and who then worked additional hours during the same pay period. In 1996, however, DHS ceased doing so in response to an audit prepared by the state Auditor General's Office. The auditor's report concluded that DHS's payment of overtime in accordance with the 1988 Wessels memorandum violated applicable state law barring the use of paid-sick-leave hours in computing the employees' entitlement to overtime compensation.

The union grieved DHS's 1996 decision to follow state law in this regard. Eventually, notwithstanding the state's contention that this issue was not substantively arbitrable, an arbitrator upheld the union's grievance and the state petitioned the Superior Court to vacate the arbitrator's award. In response, the union sought to confirm the award. After a hearing, the Superior Court ultimately agreed with the state's position and vacated the award. The union now appeals from that Superior Court judgment.

### Analysis

■ Though "judicial authority to review or to vacate an arbitration award is limited," the court "must *** [vacate] the award *** [when] the arbitrator or arbitrators exceed *** their powers." *Rhode Island Council 94, AFSCME, AFL—CIO v. State*, 714 A.2d 584, 587–88 (R.I.1998) (quoting G.L.1956 § 28–9–18). One sure way for an arbitrator to exceed his or her powers is to arbitrate a dispute that is not arbitrable in the first place. *See Rhode Island Brotherhood of Correctional Officers v. State Department of Corrections*, 707 A.2d 1229, 1234 (R.I.1998) (*RIBCO*).

And "[w]hether an issue is arbitrable is a question of law to be reviewed by the court de novo." *Rhode Island Council 94*, 714 A.2d at 588 n. 2.

■ We hold that, in this case, the Superior Court ruled correctly that the arbitrator exceeded his authority by deciding an issue that was not arbitrable *ab initio*. Here, the parties' dispute involved a non-delegable-nonmodifiable-statutory mandate for DHS to exclude paid-sick-leave hours when computing whether its employees were entitled to overtime compensation during any given pay period. As we ruled in *Town of West Warwick v. Local 2045, Council 94*, 714 A.2d 611, 612 (R.I.1998) (mem.), "a valid employment requirement prescribed by state law cannot be negotiated and is not a proper subject for arbitration." *See also Pawtucket School Committee v. Pawtucket Teachers' Alliance Local No. 930, AFT*, 652 A.2d 970, 972 (R.I.1995) (holding that "requirements of state law *** cannot be submitted to arbitration"). As a result, the arbitrator's award not only manifestly disregarded the applicable terms of § 36–4–63,[2] but the award also overrode those provisions in the parties' own CBA that barred such a result. For this reason, we affirm the trial justice's decision to vacate the award and to deny the union's motion to confirm the same.

■ In *State, Department of Mental Health, Retardation, and Hospitals v. Rhode Island Council 94 AFSCME, AFL—CIO*, 692 A.2d 318, 321–22 (R.I. 1997) (*MHRH*) (citing *Pawtucket School Committee*, 652 A.2d at 972), we held that an arbitrator cannot resolve a labor dispute by issuing a ruling that would conflict with or compromise the statutory authority or legal obligations of a department of state government. Although *MHRH* in-

---

**2.** In 1988, the General Assembly amended § 36–4–63(c) to add the words "or when requested by the employer" to the definition of overtime contained in the statute. *See* P.L. 1988, ch. 558, § 1. As a matter of law, this

amendment had no effect whatsoever on the statutory bar precluding paid sick leave from counting towards an employee's overtime compensation.

volved public-safety issues, its scope and rationale were not limited to such matters. *See, e.g., National Association of Nurses v. State*, 614 A.2d 782, 783 (R.I.1992) (per curiam) (holding that § 36–4–64 could limit a CBA provision allowing sick leave to supplement workers' compensation benefits). Rather, the *ratio decidendi* of cases like *Pawtucket School Committee, MHRH, National Association of Nurses*, and *RIB-CO* is a broader one: neither a department of state government nor a union of its employees—let alone an arbitrator—can agree to relieve the parties to a CBA of their obligation to comply with applicable state law because of an inconsistent CBA provision or a contrary past practice of the parties. Indeed, the parties to a CBA have no legal authority to contravene state law by word or deed. Thus, statutory obligations cannot be bargained away via contrary provisions in a CBA, nor can they be compromised by the past or present practices of the parties. And they certainly cannot be negated by an arbitrator who purports to do so through the medium of "contract interpretation." Indeed, "[t]his Court has previously held that *powers and responsibilities assigned to governmental employers by state law* may not be negotiated away and *are not arbitrable.*" *Town of West Warwick*, 714 A.2d at 612. (Emphases added.)

■ In sum, our cases in this area all boil down to a fundamental proposition: applicable state employment law trumps contrary contract provisions, contrary practices of the parties, and contrary arbitration awards. Thus, if a statute contains or provides for nondelegable and/or nonmodifiable duties, rights, and/or obligations, then neither contractual provi-

sions nor purported past practices nor arbitration awards that would alter those mandates are enforceable. For this reason, labor disputes and grievances that seek to modify applicable state law are not subject to arbitration because the arbitrator has no power to do so even if the parties to a CBA have agreed to such a modification or have conducted themselves in a way that contravenes what applicable state law requires.

■ Accordingly, a state official like Wessels had no power to give away the overtime store by acceding to the payment of these benefits via a method of computation that both state law and the CBA had removed from the bargaining table. Thus, neither he nor DHS had the power to modify the statutory obligations of the parties to a CBA and thereby bind the state through a course of conduct or by express contract terms to obligations that were plainly illegal because they were and remain contrary to applicable state law.[3] Illegal contracts, ultra–vires arbitration awards, and deviant–past practices of the parties are as unenforceable in the public-employment labor-law context as they are in other settings. Indeed, the result in this case merely conforms to the old and venerable rule that contracts that contravene applicable state statutes are illegal, and therefore no contractual rights can be created or enforced thereunder. *See, e.g., Birkett v. Chatterton*, 13 R.I. 299, 302 (1881) (holding that a minor plaintiff could not enforce an employment contract where such contract violated Rhode Island's child-labor statute). "The law will not help a [person] get paid for doing what the law says shall not be done." *Id.*

---

**3.** It goes without saying that, save for its ultimate decision to end the challenged practice of paying illegal overtime benefits, the state's conduct in this matter was hardly commendable. By failing to prevent or even to impede DHS's implementation of its illegal sick-leave policy, the state not only acquiesced in this long-standing practice, but also it was largely responsible for allowing it to occur in the first place. Indeed, allegedly at the behest of a large state employees union, Wessels, who was a high-ranking state official within the DOA, authored the very memorandum that caused at least DHS—if not other state departments as well—to follow this illegal practice for many years until the Auditor General's report finally gave DHS pause and caused it to stop paying this illicit overtime compensation.

## Conclusion

Pursuant to § 36–4–63, the state cannot legally allow its employees to use paid sick time to qualify for overtime compensation in a given pay period. Neither a contrary long-standing practice of the parties nor the renegade legal interpretations of a high-ranking state official can override a state law that plainly provides otherwise. For this reason, the dispute in this case was not arbitrable. And the arbitrator exceeded his powers when he allowed the dispute to become a subject of the arbitration and when he fashioned an arbitration award that flouted not only the CBA but applicable state law. Hence, we deny the union's appeal and affirm the Superior Court's judgment.

