DECISION
The Rhode Island Department of Education, Professional Employees Union, Local 2012, RIFT/AFT, AFL-CIO (Plaintiff) seeks a declaratory judgment regarding, generally, the adoption of the Employees Retirement System as a retirement program. The Rhode Island Board of Governors for Higher Education (Board of Governors) asserts that Plaintiff's request should be denied. The Retirement Board of the Employees Retirement System of the State of Rhode Island (ERS) and Frank Karpinski, in his capacity as Executive Director of the ERS, have been joined as Defendants, and have indicated in their brief that the ERS does not have a position as to the issue before this Court. This Court has jurisdiction pursuant to G.L. 1956 § 9-30-1.
 FACTS/TRAVEL
The parties have stipulated to the facts in this case. Pertinent facts are summarized as follows.
Plaintiff is the certified collective bargaining representative for certain employees of the statutorily created public entities of the Board of Governors,[1] the Rhode Island Public Telecommunications Authority[2] and the Board of Regents for Elementary and Secondary Education.[3] Prior to the creation of these entities, Plaintiff was the certified collective bargaining representative for certain employees of the Board of Regents for Education. However, in 1981, legislation was enacted which distributed the authority of the Board of Regents for Education among the three aforementioned public entities. See G.L. 1956 §§ 16-59-1 16-59-25; G.L. 1956 §§ 16-61-1 16-61-15; G.L. 1956 §§ 16-60-1 16-60-13. Upon creation of these new public entities, the employees who were previously under the authority of the Board of Regents for Education were assigned to one of these entities. Even after the employees of the former Board of Regents for Education had been distributed among the three public entities, Plaintiff continued to represent these employees and negotiated one collective bargaining agreement for these employees, regardless of whether these employees were under the authority of the Board of Governors, the Rhode Island Public Telecommunications Authority, or the Board of Regents for Elementary and Secondary Education.
Currently, only two employees of the Board of Governors are members of Plaintiff. The remaining members of Plaintiff are employees of either the Rhode Island Public Telecommunications Authority or the Board of Regents for Elementary and Secondary Education.
On or about July 1, 1997, Plaintiff entered into a single collective bargaining agreement with the Board of Governors, the Rhode Island Public Telecommunications Authority, and the Board of Regents for Elementary and Secondary Education. This agreement was to be effective through June 30, 1999, and was continued by agreement until June 30, 2000. Two employees of the Board of Governors were covered by this agreement. In pertinent part, the agreement provided that "[a]ll employees covered by this agreement are subject to and have the benefits of the State Retirement Act."[4]
Retirement benefits of the employees of the Board of Governors are governed by Title 16, Chapter 17.1 of the Rhode Island General Laws.[5]
That Chapter provides that all covered employees who are not active members of the ERS[6] must join a retirement program as soon as they are eligible to do so. Active members of the ERS have the option of either continuing membership in the ERS or joining a program and retaining a limited membership in the ERS. Section 16-17.1-1(4) defines a "program" or "retirement program" as "any retirement program adopted by the board of regents for higher education[7] for any of its employees as defined in this section." The Board of Governors asserts that it has adopted three retirement programs — none of which is the ERS.
Nonetheless, prior to 1999, the Board of Governors automatically enrolled new employees in the ERS. However, in 1999, Richard Mumford of the ERS informed the Board of Governors that new employees who were not active participants of ERS should be enrolled in a program adopted pursuant to Title 16, Chapter 17.1. Thus, the Board of Governors began to offer new employees, who were not active participants in ERS, a choice of one of the three programs they considered to have been adopted. The ERS was not offered as one of these three programs. With regard to the two employees of the Board of Governors who are members of Plaintiff, one was hired prior to 1999, and thus was automatically enrolled in ERS. However, by agreement, that employee has been transferred out of the ERS and into one of the three programs that the Board of Governors considers to be adopted. The other employee, who was hired after 1999, was given the option of joining one of the three programs that the Board of Governors considers to be adopted (none of which was the ERS), and she chose to enroll in one of those programs.
In 2001, the Board of Governors sought an advisory opinion from the ERS as to whether or not members of Plaintiff could be enrolled in the ERS. The ERS responded that based upon the statutory provisions of Title 16, Chapter 17.1, employees of the Board of Governors "may elect to participate in the ERS program only if this retirement program has been adopted by the Board of Regents." (October 18, 2001 letter from Frank J. Karpinski, Executive Director of the ERS, to Anne Marie Coleman, Office of Human Resource Development.) Plaintiff and the Board of Governors disagree as to whether or not the Board of Governors has adopted the ERS as a program. Plaintiff argues that the Board of Governors has adopted the ERS by virtue of the collective bargaining agreement and thus seeks a declaratory judgment to that effect. The Board of Governors denies that it has adopted the ERS as a program, stating that it never entertained any motion or took any vote to adopt ERS. The ERS has no position on the matter and agrees to be bound by the decision of this Court.
 STANDARD OF REVIEW
Under the Uniform Declaratory Judgment Act, this Court "shall have the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." G.L. 1956 § 9-30-1. The stated purpose of the Act is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." G.L. 1956 § 9-30-12; see also Capital Props., Inc.v. State, 749 A.2d 1069, 1080 (R.I. 1999) (citations omitted) (stating that the purpose of the Act is "to facilitate the termination of controversies"). "A decision to grant a remedy under the Uniform Declaratory Judgments Act is purely discretionary." Woonsocket Teachers'Guild Local Union 951, AFT v. Woonsocket Sch. Comm., 694 A.2d 727, 729 (R.I. 1997). However, the necessary predicate to the exercise of that discretion under the Act is the existence of an actual justiciable controversy. See Providence Teachers Union v. Napolitano, 690 A.2d 855, 856 (R.I. 1997).
DECLARATORY JUDGMENT
Plaintiff, in its verified complaint, seeks a declaratory judgment that:
 "1. Adoption of and/or ratification of the collective bargaining agreements which contains Article VIII which reads "Retirement:
 All employees covered by this Agreement are subject to and have the benefits of the State Retirement Act" meets the requirements of R.I.G.L. § 16-17.1-1(4)
 2. By virtue of said adoption and/or ratification, all employees of the defendant, past, present and/or future have the option and right to participate in the Employees Retirement System.
 3. There is no statutory provision or authorization enabling defendant to negate and/or withdraw said adoption and/or ratification once given, as granted on August 19, 1997.
 4. If said employees of the defendant are compelled to withdraw from the Employees Retirement System so as to participate in a TIAA-CREF plan and/or program, such employee is entitled to carry over thereto so the employee and employer contributions made by them and/or contributions on their behalf.
 5. That the parties be ordered to comply with said declaratory judgment.
 6. That the plaintiff be granted such other relief as is proper."
The Board of Governors asserts that Plaintiff's request for declaratory judgment should be denied. The ERS has no position as to this issue.
As an initial matter, this Court notes that the requirement that there must be an actual controversy has been met. Plaintiff and the Board of Governors disagree as to whether or not the Board of Governors has adopted the ERS as a program. This Court will entertain Plaintiff's petition since a declaratory judgment in this matter will resolve the issue of whether or not the ERS is an option for employees of the Board of Governors.
Plaintiff has asked this Court to determine whether or not the Board of Governors adopted the ERS as a retirement program by approving the collective bargaining agreement which included the provision that "[a]ll employees covered by this Agreement are subject to and have the benefits of the State Retirement Act." This Court notes that although a "program" or "retirement program" is defined in § 16-17.1-1(4) as "any retirement program adopted by the board of regents for higher education for any of its employees as defined in this section," Chapter 17.1 does not define the word "adopted" or proscribe a procedure for the adoption of a retirement program.
Plaintiff argues that the Board of Governors' agreement to the collective bargaining agreement constituted the requisite adoption of the ERS as a retirement program. According to Plaintiff, there is no statutory provision which prohibits the Board of Governors from adopting the ERS as a program. The Board of Governors denies that its acceptance of the collective bargaining agreement constituted adoption of the ERS as a program, stating that it has never even entertained a motion to adopt ERS as a retirement program. Furthermore, according to the Board of Governors, since it has not adopted the ERS as a program, the provision in the collective bargaining agreement relating to retirement was made in excess of its authority.
At the outset, this Court must determine whether or not the adoption of the ERS as a program is permissible under Title 16, Chapter 17.1, entitled "Alternate Provisions for Retirement of Teachers in State Colleges." If Chapter 17.1 does not allow for the adoption of the ERS as a retirement program, then the ERS may not be adopted as a program by the Board of Governors, regardless of the terms of the collective bargaining agreement. After a careful review of Chapter 17.1, this Court, for reasons delineated below, finds that the Board of Governors is not entitled to adopt the ERS as a program, pursuant to the provisions of Chapter 17.1.
Chapter 17.1 does not specifically state that the ERS may not be adopted as a program. However, the Supreme Court has held that "[w]hen construing a statute, our `task is to establish and effectuate the intent of the Legislature.'" Ferreira v. Integon Nat'l Ins. Co., 809 A.2d 1098, 1100 (R.I. 2002) (citations omitted). If "the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings" and "there is no room for statutory construction." Cummings v. Shorey,761 A.2d 680, 684 (R.I. 2000) (citations omitted). However, if the Court discerns a statutory ambiguity, the Court should "examine the entire statute to ascertain the `legislative intent behind the enactment.'"Ferreira, 809 A.2d at 1100. When construing a statute "in situations in which a particular statutory provision is part of a single statutory scheme, the legislative intent must be gathered from an examination of the entire statute rather than from one part only." See In re RhodeIsland Comm'n for Human Rights, 472 A.2d 1211, 1212 (R.I. 1984). Accordingly, in the instant case, this Court has looked to all the provisions of Chapter 17.1 to determine whether or not the ERS may be adopted as a program under that Chapter.
This Court first notes that § 16-17.1-1(1) defines "average compensation" as "the average of the annual contractual or yearly salary of an employee during the five (5) consecutive years of employment when average compensation was the highest either: (i) as an employee under theprogram, or (ii) as a member of the state employees retirement system."
(emphasis added.) This provision, which provides that an employee is either a member of the program or a member of the ERS, indicates that Chapter 17.1 does not contemplate that a program may include the ERS. This Court is mindful that "[t]he use of the disjunctive usually indicates alternatives and requires that these alternatives be treated separately." 1A Norman J. Singer, Sutherland Statutory Construction
§ 21.14 (6th Ed.) "Generally, courts presume that `or' is used in a statute disjunctively unless there is clear legislative intent to the contrary." Id. See Members of Jamestown School Committee v. Schmidt,122 R.I. 185, 405 A.2d 16 (1979) (citing Earle v. Zoning Board ofReview, 96 R.I. . 321, 324, 191 A.2d 161, 163 (1963) ("Generally, the conjunctive `and' should not be considered as the equivalent of the disjunctive `or.'")).
Additionally, this Court has looked to § 16.17.1-2, which provides in pertinent part:
 "(a) All employees including those so employed on May 24, 1967, who have not been active members of the state employees retirement system, upon becoming eligible for membership in a program, shall be required to participate in the program.
 (b)(1) All employees including those so employed on May 24, 1967, who become eligible for membership in a program, and who are active members of the state employees retirement system, are extended the option of continuing their active membership in the state employees retirement system or joining the program and retaining a limited membership in the state employees retirement system as set forth in this chapter and be eligible for a vested pension only as contained in this chapter. These limited members shall not be entitled to any other benefits or provisions.
 (2) All employees who become eligible for membership in the program after July 1, 1967, shall make their election within sixty (60) days after they become eligible for participation in the program. All employees not exercising the option to join a program shall be deemed to have chosen to continue active membership in the state employees retirement system in lieu of exercising the option to participate under the program."
General Laws § 16-17.1-2 states that employees who are not active members of the ERS are required to participate in a program, while active members of the ERS are given the option of either remaining an active member of ERS or joining a program and retaining a limited membership in the ERS. If the legislators had contemplated that the program could include the ERS, then active members would not have to choose between remaining an active member of the ERS or joining a program.
Additionally, this Court notes that § 16-17.1-5 provides that when an active member of the ERS elects to participate in a program "only the years of the employee's service prior to making the election to participate under the program shall be considered as years of service for the purposes of computing the benefits available under the state employees retirement system." This provision also assumes that the program does not include the ERS. If the legislators had contemplated that the program could include the ERS, they would not have provided that only the years of service completed prior to the election of the program could be considered in computing benefits under the ERS.
General Laws § 16-17.1-3 provides for an employee's optional withdrawal of contributions to the ERS upon their election to participate in a program, while § 16-17.1-4 provides for an employee's continuing membership in the ERS upon their election to participate in a program. Such provisions also assume that the program does not include the ERS. This Court is mindful that the titles of each of these sections include the phrase "upon participation in another program."[8] However, when reading Chapter 17.1 in its entirety, this Court does not find that the use of the phrase, "another program," indicates that the ERS is considered to be a program as utilized in Chapter 17.1.
Based upon the above, this Court finds that the legislators did not intend that the ERS could be adopted by the Board of Governors as a program. Accordingly, since the Board of Governors does not possess the authority to adopt the ERS as a program, its agreement to the collective bargaining agreement could not have constituted an adoption of the ERS as a program. See State v. Rhode Island Alliance of Social Servs.Employees., Local 580, 747 A.2d 465, 469 (R.I. 2000) (holding that "applicable state . . . law trumps contrary contract provisions, contrary practices of the parties, and contrary arbitration awards").
Furthermore, even assuming arguendo that the Board of Governors does possess the authority to adopt the ERS as a program, this Court defers to the Board of Governors' position that its agreement to the collective bargaining agreement did not constitute adoption of the ERS as a program. Our Supreme Court has held that "while not controlling, the interpretation given a statute by the administering agency is entitled to great weight." Berkshire Cablevision v. Burke, 488 A.2d 676, 679 (R.I. 1985). "The law in Rhode Island is well settled that an administrative agency will be accorded great deference in interpreting a statute whose administration and enforcement have been entrusted to the agency." In reLallo, 768 A.2d 921, 926 (R.I. 2001). Furthermore, "where the provisions of a statute are unclear or subject to more than one reasonable interpretation, the construction given by the agency charged with its enforcement is entitled to weight and deference as long as that construction is not clearly erroneous or unauthorized." Gallison v.Bristol Sch. Comm., 493 A.2d 164, 166 (R.I. 1985).
In the instant case, the Board of Governors is the entity charged with the responsibility of adopting retirement programs. Thus, even though one could construe the word, "adopted," in a manner differently than did the Board of Governors, this Court defers to the Board of Governors' interpretation of adopted, which would require a more formal and specific action other than mere ratification of a collective bargaining agreement. Such an interpretation of "adopted" is not clearly erroneous or unauthorized, since Chapter 17.1 does not proscribe a specific method or procedure for adoption of a program. Furthermore, our Supreme Court has noted that it "has consistently understood `adopt' to mean `create,' `develop,' and `enact.'" In re Advisory Opinion to Governor (EthicsCom'n), 612 A.2d 1, 8 (R.I. 1992).
The Board of Governors' determination that it has not adopted the ERS as a program also does not prejudice any employees of the Board of Governors who are members of Plaintiff since none of these employees are members of the ERS. Thus, pursuant to § 16-17.1-1(4), where the Board of Governors has not adopted the ERS, its employees who are not already active members of the ERS may not elect to participate in the ERS, notwithstanding the terms of the collective bargaining agreement. SeePower v. Providence, 582 A.2d 895, 900 (R.I. 1990) (holding that "contracts entered into in contravention to a state statute . . . are illegal, and no contract rights are created thereby").
This Court is mindful that the Board of Governors is exempted from the provisions of the Administrative Procedures Act. See G.L. 1956 §16-59-12 (providing that the "provisions of the Administrative Procedures Act, chapter 35 of title 42, shall not apply to this chapter"); G.L. 1956 § 42-35-18(b)(25) (providing that the Administrative Procedures Act does not apply to "Chapter 59 of title 16 (Board of Governors for Higher Education)"). However, this exemption does not change the deference due to the Board of Governors' interpretation of Chapter 17.1. C.f. Lyman v.Employees' Retirement Sys., 693 A.2d 1030 (1997) (holding that deference was due to the administrative interpretation set forth by the Retirement Board — an entity, which at the time of the decision, was exempted from the Administrative Procedures Act).[9]
Plaintiff also requests this Court to declare that there is no statutory provision or authorization enabling Defendant to negate and/or withdraw said adoption and/or ratification once given, as granted on August 19, 1997. However, as this Court has determined that ratification of the collective bargaining agreement did not constitute adoption of the ERS as a program, this Court need not reach this issue. Likewise, this Court need not address Plaintiff's fourth request for declaratory judgment (contemplating that this Court may require employees of the Board of Governors to withdraw from the ERS) since the record before this Court reflects that the two employees of the Board of Governors who are members of Plaintiff are not members of the ERS.
CONCLUSION
For the above reasons, this Court declares that ratification of said collective bargaining agreement by the Board of Governors did not constitute adoption of the ERS as a program under Title 16, Chapter 17.1 of the Rhode Island General Laws.
Counsel shall submit the appropriate judgment for entry.
[1] Statutory provisions creating and governing the Board of Governors for Higher Education are contained in G.L. 1956 §§ 16-59-116-59-25.
[2] Statutory provisions creating and governing the Rhode Island Public Telecommunications Authority are contained in G.L. 1956 §§16-61-1 16-61-15.
[3] Statutory provisions creating and governing the Board of Regents for Elementary and Secondary Education are contained in G.L. 1956 §§16-60-1 16-60-13.
[4] The State Retirement Act refers to Chapters 8-10 of Title 36 of the Rhode Island General Laws. These chapters govern the Employees' Retirement System (ERS). The ERS was established to provide retirement allowances for employees of the State of Rhode Island. See G.L. 1956 § 36-8-2. All state employees, as defined in Chapter 8 of Title 36, are required to become members of the Employees' Retirement System with the exception of "those employees who may be required or elect to participate in a retirement program existing by virtue of chapter 17.1 of title 16 or § 36-10-9.1." G.L. 1956 § 36-9-2.
[5] Title 16, Chapter 17.1 of the Rhode Island General Law was enacted in 1967 and thus has governed the retirement benefits of employees of the Board of Governors since the inception of the Board of Governors. Furthermore, that chapter governed the retirement benefits of employees of the Board of Regents, the predecessor of the Board of Governors.
[6] The Employees' Retirement System is described in note 4.
[7] Section 16-59-16 of the Rhode Island General Laws, entitled "Meaning of terms in existing law," provides that "[w]hen in any law, resolution, document, record, instrument, proceeding, or other place the words `board of trustees of state colleges' or `boards of regents for education' as they shall apply to higher education shall appear, they shall be construed to mean `board of governors for higher education.'"
[8] Section 16-17.1-3 is entitled "Optional withdrawal of contributions to retirement system upon participation in another program — Notice," and § 16-17.1-4 is entitled "Continuing membership in retirement system upon participation in another program."
[9] This Court notes that due to legislative changes in 2002, the Retirement Board is no longer exempted from the Administrative Procedures Act. See G.L. 1956 § 42-35-18(b). However, at the time of the Lyman
decision, the Retirement Board was exempted from the Administrative Procedures Act.