**STATE of Rhode Island (DEPARTMENT OF ADMINISTRATION)**

v.

**RHODE ISLAND COUNCIL 94, A.F.S.C.M.E., AFL–CIO, LOCAL 2409.**

**No. 2006–96–Appeal.**

Supreme Court of Rhode Island.

June 22, 2007.

Sue Ellen Dunn, Esq., Cranston, for Plaintiff.

Carly Iafrate, Esq., for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on May 14, 2007, on appeal by Rhode Island Council 94, A.F.S.C.M.E., AFL–CIO, Local 2409 (Council 94 or union), from a Superior Court order granting a motion to vacate an arbitration award in Council 94's favor, which motion was filed by the State of Rhode Island (state). Council 94 argues that the Superior Court justice erred in his interpretation of the statutory language in dispute and that, therefore, his decision should be reversed and the arbitration award confirmed. We agree.

### Facts and Travel

In July 2001, the General Assembly enacted G.L.1956 § 42–11–21 (the merger statute), as enacted by P.L.2001, ch. 77, art 29, § 2, an act that established a Division of Sheriffs (division) within the Department of Administration (DOA); the division was vested with the powers and duties previously performed by the Rhode Island Sheriffs (sheriffs) and Marshals (marshals), two separate classifications that were merged into the division. Before the

merger, the sheriffs and the marshals were represented by separate unions, had disparate work schedules, pay scales, and received different training, as appropriate to their separate responsibilities. Although the functions previously performed by the two units were combined by the merger statute, the new law allowed the director of the DOA (director) to postpone transferring any function "until such time as the director deems appropriate; provided, however, the transfer of functions shall be completed within three (3) years." Section 42–11–21(d)(2).

Before the merger statute was enacted, inmate transportation was a function that was done by the marshals as well as the sheriffs, particularly in the courthouses outside of Providence County; prisoner extraditions, however, were done almost exclusively by the marshals, and any overtime resulting from those extraditions was accorded to the marshals. Extraditions were among the activities that were theoretically assigned to a special operations unit under the merger statute, which states: "Special operations include, but shall not be limited to, transportation of high risk inmates, extraditions, the execution of criminal warrants, prosecution and mutual aid to the police departments of the cities and towns." Section 42–11–21(c). The merger statute also provides that members of the "special operations unit initially will be comprised of personnel transferred from the Rhode Island state marshals." *Id.* It is undisputed, however, that a special operations unit was never created and that some, but not all, of these functions were designated to the Inmate Transportation Unit (ITU). The marshals were assigned to the ITU and were not required to bid into those positions, but, rather, continued to perform their former duties, which included overtime assignments for extraditions, to the exclusion of other qualified members of the division.

The merger statute also provided that the newly merged groups would be represented by one body for collective bargaining purposes and that all the resources previously held by the separate units would be transferred to the division. In his decision and award, the arbitrator noted that on August 17, 2001, the two unions agreed to a consent election, and Council 94 was certified as the bargaining representative of the employees in the division. He also found that little had changed for the marshals; they remained at their prior worksite on the state prison campus, continued to work forty hours a week at their previous pay grade, and engaged in their preexisting duties, including extraditions, some of which were on an overtime basis.

The arbitrator also found that after the merger, issues developed between the parties to this unified classification, including the allocation of overtime; disagreements arose with respect to hospital details and out-of-state extraditions. Efforts were undertaken to integrate and cross-train members of the division in order to "qualify the former [s]heriffs to perform the work of the former [m]arshals, including out-of-state extraditions." An eight-hour training program was announced as available to firearms-qualified deputies.[1] The training program was attended by sixty to seventy deputy sheriffs; topics included field training, commercial driver's license training, and preparation of extradition paperwork. The parties agreed that this training program was a condition precedent to eligibility for extradition assignments, but they disagreed on whether the training alone qualified a deputy sheriff for inclusion in the overtime rotation.

---

1. According to the arbitrator, some, but not all, sheriffs were firearms qualified; firearms qualification was a prerequisite for the extradition training program.

Although a single integrated seniority list for the newly merged division was prepared in October 2001, this list was never used, and overtime assignments arising from inmate extraditions were restricted to members of the ITU (the former marshals). In April 2002, Council 94 filed a grievance challenging the allocation of extradition-related overtime. The state denied the grievance and the action proceeded to arbitration.

Before the arbitrator, Council 94 argued that the state violated the overtime distribution clause in the collective bargaining agreement (CBA) when it excluded qualified members of the bargaining unit from extradition details, thus depriving them of overtime opportunities. The union contended that neither the statutory designation of a "special operations unit"—that was never created—nor the provision in the merger statute that allowed the director to postpone the transfer of functions for up to three years—a prerogative that never was utilized—gave rise to a grievance that was not substantively arbitrable.

On the other hand, the state contended that because the transfer of extradition work to the division was a function of the merger statute and not the CBA, the grievance did not present an arbitrable issue. The state argued that the provision allowing for a special operations unit permitted the director to restrict this work to the former marshals, thereby rendering the grievance inarbitrable. Additionally (and for the first time), the state suggested that adopting the procedure that the union endorsed would imperil the employees and the public; the state also asserted that in light of this Court's previous decisions respecting conflicts between statutory provisions and collective bargaining provisions,

the union did not present an arbitrable grievance.[2]

On November 29, 2004, the arbitrator issued a lengthy and comprehensive decision and award. He noted that Council 94 was seeking extradition assignments only for qualified sheriffs who had attended the specialized training course and who were firearms qualified. He found that the state's eleventh-hour reliance on a public safety defense to justify excluding former sheriffs was without merit. The arbitrator also found that the so-called transitional clause did not affect the arbitrability of the grievance because the director never exercised his statutory discretion to postpone transferring any functions to the division. He noted that "this transportation work had been performed before the merger not only by the former [m]arshals but also by the former [s]heriffs, who were routinely involved in ground transportation, as well as occasional extraditions."

Significantly, the arbitrator noted that Dr. Robert Carl (Dr. Carl), the then-DOA director, issued a memorandum on November 12, 2002, expressing his concerns regarding the potential fiscal impact that could result if the extradition details were not allocated according to the CBA. Nonetheless, the division continued to limit overtime to former marshals assigned to the ITU. The arbitrator also recounted a report by State Police Lieutenant Stephen Lynch (Lt.Lynch), who served as interim administrator of the division after the former executive high sheriff was relieved of his duties. Lieutenant Lynch referred to the poor morale in the division because of overtime issues, including the restriction of extradition overtime to members of the ITU. According to Lt. Lynch, although not every deputy was qualified to do this

---

2. *See, e.g., State v. Rhode Island Alliance of Social Services Employees, Local 580, SEIU,* 747 A.2d 465, 469 (R.I.2000) (*RIASSE*) (holding that "labor disputes and grievances that seek to modify applicable state law are not subject to arbitration").

work, he was confident that some members of the division clearly were capable and should be offered these overtime opportunities.

The arbitrator decided that this dispute did not fall within this Court's ruling in *State v. Rhode Island Alliance of Social Services Employees, Local 580, SEIU*, 747 A.2d 465, 468 (R.I.2000) (*RIASSE*), in which we declared that the overtime policy that the union sought to enforce was in direct conflict with a statutory provision governing overtime eligibility. Here, because the state conceded that it bypassed *all* members of the bargaining unit for extradition work (both straight time and overtime), including those members who were qualified and had performed extradition work in the past, the arbitrator rejected the state's argument that insufficient training and lack of inmate contact was a defense.

The arbitrator concluded that all qualified members of the newly merged division, whether former sheriffs or former marshals, must be included in the rotation for extradition overtime shifts, regardless of whether they were assigned to the ITU. Additionally, he awarded a make-whole remedy to those "grievants who were qualified to perform the details on and after April 4–6, 2002" [3] for the shifts they would have worked had the proper seniority rotation been utilized.

The state filed a motion in Superior Court seeking to vacate the arbitration award in accordance with G.L.1956 § 28–9–14; [4] Council 94, in turn, objected and moved to confirm the award in accordance with § 28–9–17.[5]

Before the Superior Court, the state argued that the grievance was non-arbitrable because the issues raised by the parties compelled the arbitrator to interpret and apply the merger statute rather than the CBA. The state asserted that "the arbitrator's expansive conclusion regarding overtime assignments defeat[ed] the statutory purpose and contravene[d] state law." [6] Conversely, Council 94 argued in favor of arbitrability, contending that, because the state could comply with *both* the terms of the CBA *and* the merger statute,

---

**3.** The arbitrator determined that April 4–6, 2002, would be the appropriate start date for the monetary remedy because the grievance was filed on April 11, 2002, and, because a grievance must be presented within five working days after the grievable occurrence became known pursuant to the CBA, the instant grievance may relate back to no earlier than April 4–6, 2002.

**4.** General Laws 1956 § 28–9–14, entitled "Arbitration as special proceeding Jurisdiction of Superior Court" states:

"Arbitration of a controversy under a contract or submission described in this chapter shall be deemed a special proceeding, of which the superior court for the county in which one of the parties resides or is doing business, or in which the arbitration was held, shall have jurisdiction."

**5.** Section 28–9–17, entitled "Order confirming award" states in pertinent part:

"At any time within one year after the award is made as prescribed in § 28–9–16, any party to the controversy which was arbitrated may apply to the court having jurisdiction as provided in § 28–9–14 for an order confirming the award. Upon that application, the court must grant the order unless the award is vacated, modified, or corrected as prescribed in §§ 28–9–18 and 28–9–19, or unless the award is unenforceable under the provisions of § 28–9–13."

**6.** The state also argued that, even if the director of the DOA was mandated to consider the former sheriffs for overtime assignments within the ITU, the arbitrator nonetheless erred in awarding the monetary remedy retroactively from April 2002, because the merger statute allowed the DOA up to three years to transfer functions to the newly merged department. This issue is not before us and is deemed waived.

there was no conflict between the two that would bar arbitration of the issue.

Citing this Court's decisions in *Vose v. Rhode Island Brotherhood of Correctional Officers*, 587 A.2d 913 (R.I.1991) and *State, Department of Mental Health, Retardation, and Hospitals v. Rhode Island Council 94, A.F.S.C.M.E., AFL–CIO*, 692 A.2d 318 (R.I.1997) (*MHRH* ), the hearing justice vacated the arbitration award. He found that the arbitrator exceeded his powers by interpreting the CBA in a manner that frustrated the intent of the merger statute, which expressly vested the director of the DOA with the authority to decide who performs special operations in the division. The hearing justice declared that "[w]hen an arbitrator is confronted with a conflict between a statute and a CBA, as we are in this matter, this conflict is not subject to the agreement's arbitration clause." In vacating the arbitrator's award, the hearing justice stated that "it is clear that an arbitrator's stroke of the pen cannot alter the statutory recognition of the special operations unit or the [director's] statutory power to decide who will perform the functions of this unit." We disagree with this reasoning and conclude that the hearing justice was clearly wrong.

### Standard of Review

■ Generally, " '[a]bsent a manifest disregard of a contractual provision or a completely irrational result,' " the award of an arbitrator will be upheld. *Providence*

*Teachers Union v. Providence School Board*, 725 A.2d 282, 283 (R.I.1999). However, " 'the issue of whether a dispute is arbitrable concerns a question of law and is subject to a broader standard of review than is the arbitrator's decision on the merits.' " *MHRH*, 692 A.2d at 323. As such, our review of the issue of arbitrability is *de novo*. *State Department of Corrections v. Rhode Island Brotherhood of Correctional Officers*, 866 A.2d 1241, 1247 (R.I.2005).

■ The sole issue before this Court is whether the overtime dispute between Council 94 and the DOA was an arbitrable grievance. An arbitrator exceeds his or her powers if the arbitrator decides an issue that is not arbitrable. *State Department of Corrections v. Rhode Island Brotherhood of Correctional Officers*, 867 A.2d 823, 829 (R.I.2005). If the dispute is non-arbitrable, then the award must be vacated in accordance with § 28–9–18(a)(2).[7] In contrast, if the arbitrator decides an arbitrable grievance and there is no other basis upon which to vacate the award, it must be confirmed.[8] Section 28–9–17.

### Arbitrability

On appeal, Council 94 contends that, although the hearing justice correctly set forth the applicable standard for arbitrability, he nonetheless erred when he applied this principle. Council 94 argues that for the state to be excused from com-

---

7.  Section 28–9–18 states in pertinent part:
    "(a) In any of the following cases the court must make an order vacating the award, upon the application of any party to the controversy which was arbitrated:
    " * * *
    "(2) Where the arbitrator or arbitrators exceeded their powers * * *."

8.  In addition to a decision by the arbitrator that exceeds his or her powers, the grounds

for vacating an arbitration award include lack of a "valid submission or contract," "fraud," or imperfect execution by the arbitrator of his or her powers such "that a mutual, final, and definite award upon the subject matter submitted was not made[,]" § 28–9–18(a), as well as an arbitrator's "manifest disregard of a contractual provision or a completely irrational result." *Town of Coventry v. Turco*, 574 A.2d 143, 146 (R.I.1990).

pliance with the CBA, there must be a *direct* conflict between the language of the relevant statute and the CBA and that no such direct conflict exists in this case. *See RIASSE*, 747 A.2d at 468–69. We agree with these contentions.

To determine whether a direct conflict exists between the merger statute and the CBA that would preclude arbitration of this dispute, this Court examines the pertinent provisions of the CBA in light of the statute. *See id.* Section 42–11–21(c) provides in pertinent part:

"The director of the department of administration shall appoint deputy sheriffs and other necessary classifications, subject to the appropriation process, to provide assistance in the areas of courthouse and cellblock security, transportation of prisoners, staff training and special operations. Special operations include, but shall not be limited to, transportation of high risk inmates, extraditions, the execution of criminal warrants, prosecution and mutual aid to the police departments of the cities and towns. This special operations unit initially will be comprised of personnel transferred from the Rhode Island state marshals."

The relevant provisions of the CBA provide:

"Overtime work is to be made a matter of record and distributed fairly and equitably among employees eligible for and capable of performing the work in their respective division and class of position. A record of overtime work will be furnished to the Union at the close of each pay period." CBA, Article 8.6.

"Overtime shall be offered to employees eligible for overtime on the basis of their seniority in their classification within the division in which they are employed * * *." CBA, Article 8.8.

■ This Court has held that "a valid employment requirement prescribed by state law cannot be negotiated and is not a proper subject for arbitration." *Town of West Warwick v. Local 2045, Council 94*, 714 A.2d 611, 612 (R.I.1998) (mem.). Thus, "applicable state employment law trumps contrary contract provisions, contrary practices of the parties, and contrary arbitration awards." *RIASSE*, 747 A.2d at 469. However, we recognize that "arbitrators may and should decide questions of relevant state law and the interpretation thereof in resolving a grievance brought pursuant [to] a CBA." *Rhode Island Brotherhood of Correctional Officers v. State*, 643 A.2d 817, 821 (R.I.1994).

Clearly, there are circumstances in which a supervisor or director responsible for carrying out the state's responsibilities and "empowered by clearly delineated state law," must be free to perform those duties unhampered by contrary provisions of a CBA. *Id.* at 822. This Court will not hesitate to uphold this principle. It is a fundamental proposition that state law will trump contrary contract provisions when the statute provides for nondelegable or nonmodifiable duties and responsibilities in connection with the functions of state government. *RIASSE*, 747 A.2d at 469. But there must be a direct conflict between the statutory language and a competing contractual provision. *See MHRH*, 692 A.2d at 324–25.

■ In the case before us, the hearing justice found that the arbitrator had exceeded his powers when he found that there was no direct conflict between the merger statute and the CBA. The hearing justice found that the statute "expressly and unambiguously gives the Director of the Department of Administration the authority to decide who performs special operations * * *." We disagree with this conclusion, and we are unable to discern a

direct conflict between the language of § 42–11–21(c) and Articles 8.6 and 8.8 of the CBA. We agree with Council 94 that nothing in § 42–11–21(c) restricts extradition work to former marshals or forbids the distribution of overtime to bargaining-unit members who are qualified to do the work. The arbitrator found that § 42–11–21(c) does not govern the manner in which extradition overtime should be assigned, and we agree with his finding.

Additionally, the arbitrator noted that the state never asserted that it had established a "special operations unit," to which the director would have had exclusive authority under the statute to appoint members. Indeed, the record supports his conclusion: Dr. Carl, the then-director, wanted overtime to be "spread around" and he was particularly concerned about extradition overtime. Doctor Carl noted in his 2002 memo that a number of sheriffs had been trained to handle these functions and that it was unacceptable for a small number of people to receive most of that overtime. Further, at oral argument before this Court, the state conceded that the remaining functions of the nonexistent special operations unit, as enumerated in the merger statute, including "transportation of high risk inmates, * * * the execution of criminal warrants, [and] prosecution and mutual aid to the police departments of the cities and towns," § 42–11–21(c), were not restricted to the ITU, but are regularly done by non-ITU sheriffs.

Further, the arbitrator found that the temporal limitation set forth in § 42–11–21(c), requiring that the unit would be "*initially* * * * comprised of personnel transferred from the Rhode Island state marshals" was of no assistance to the state and had no bearing on arbitrability. (Emphasis added.) This language merely provided that the first unit of marshals was exempt from bidding for their positions; but, the arbitrator found, when new vacancies or openings arose, they were to be "filled in accordance with the promotion and transfer clauses of the [CBA]." The arbitrator concluded that nothing in the merger statute addressed "the question of how extradition overtime will be assigned." He found that by "November, 2001, the former Marshals had enjoyed a monopoly on the overtime for four or more months" and that this "more than satisfied the time limits[, if at all applicable,] of the 'initially comprised' clause * * *." From then on, the arbitrator found, this section had no bearing on the dispute between the parties.

Finally, the arbitrator was "unable to discern how compliance with a contractual overtime clause—which limits eligibility to employees who are 'capable of performing' the work at issue—contravenes public policy or compromises public safety."[9] Because the union was seeking overtime only on behalf of those employees who were qualified[10] to do the work, the arbitrator concluded that the grievance was arbitrable and would in no way contravene or compromise public policy or public safety.

We agree with these findings, and we are of the opinion that the grievance was substantively arbitrable. As such, we see no cause to look beyond the issue of the

9. The arbitrator also found that if Council 94 argued for extradition overtime on behalf of any and all members of the division, "without regard to their training and qualifications to perform extraditions, that portion of the grievance that related to the unqualified employees might well be found inarbitrable."

10. It goes without saying that only those employees found to be qualified are eligible for the overtime assignments in dispute.

arbitrability of this dispute or to otherwise vacate the award of the arbitrator. To hold otherwise would expand our previous holdings relative to arbitrability and we decline to do so. We are of the opinion that nothing in the merger statute directly conflicts with the relevant provisions of the CBA, and we reverse the decision of the hearing justice.

### Conclusion

For the aforementioned reasons, the appeal of Council 94 is sustained and the judgment of the Superior Court is vacated. The papers in this case may be returned to the Superior Court with directions to enter an order confirming the arbitration award.