DECISION
This case is before the Court on the Rhode Island Airport Corporation's ("RIAC") motion to vacate two separate Arbitration Awards issued on January 23, 2008 ("First Award") and June 10, 2009 ("Second Award"). Rhode Island Council 94, AFSCME, AFL-CIO, Local 2873 ("Council 94" or "Union") simultaneously moves to confirm both awards. The dispute arose after the RIAC failed to utilize bargaining unit employees to perform fire watch work during a terminal construction project at T.F. Green Airport. The Arbitrator's First Award found that RIAC's actions violated the Collective Bargaining Agreement between the parties. In the Second Award, the Arbitrator determined that the aggrieved parties are entitled to be compensated for lost overtime, set forth a method for calculating lost wages, and remanded the matter to the parties to make the necessary calculations. For the reasons set forth below, the Court confirms both of the Awards in their entirety.
 I. Facts and Travel
For the past few decades, Council 94 has represented the employees of T.F. Green Airport for the purposes of collective bargaining. The Airport Rescue Firefighters, who are *Page 2 
employed by the Airport Fire Department, are included in this group of represented employees. Prior to the events giving rise to the underlying dispute, the Airport Firefighters conducted fire watches at the airport when such services were needed. A fire watch occurs when a person is assigned to an area for the purpose of preventing a fire from occurring, putting out small fires, and notifying building occupants and the fire department of an emergency. For example, whenever work at the airport involved welding or other such "hot work," the Airport Fire Department would require an Airport Firefighter to perform a fire watch.
In 2005, the Airport began planning for a number of renovations and ultimately hired Skanska USA Building, Inc., to serve as the project's general contractor. Although the Warwick Fire Department played no role in authorizing or overseeing hot work at the Airport during the previous decade, Skanska undertook to acquire the permits required for the project from the Warwick Fire Department instead of from the Airport Fire Department. As a condition of these permits, the Warwick Fire Department required its own personnel to be on site to perform fire watches when necessary. After work on the project actually began in April of 2006, the Union became aware that personnel from the Warwick Fire Department were performing these necessary fire watches. Adamant that such work should be performed by the Airport Firefighters, the Union filed a number of grievances. When the grievances were not resolved to the satisfaction of the Union, the parties proceeded to Arbitration.
On January 23, 2008, the First Award was issued. Therein, the arbitrator held the dispute was arbitrable and that the RIAC violated the CBA by using Warwick Firefighters to perform fire watches. Because the parties had not presented any evidence relating to the issue of an appropriate remedy, the Arbitrator remanded the matter to the parties so they could attempt to agree on a remedy, reserving jurisdiction over the matter in the event that an agreement could not *Page 3 
be made. After the First Award was issued, RIAC filed a motion to vacate, and the Union filed a motion to confirm. These motions were stayed by the Court, and the parties returned to the arbitrator after being unable to agree on an appropriate remedy.
On June 10, 2009, the Second Award was issued. Therein, the arbitrator indicated that the aggrieved Airport Firefighters were entitled to a make-whole remedy for missed overtime from July 26, 2006 to January 15, 2008. See
2009 Katz Award at 15. The Arbitrator provided a method for calculating lost wages and remanded the matter to the parties to make the necessary calculations. Following this Award, RIAC filed a motion to vacate both Awards, and the Union filed a motion to confirm. These motions are currently before the Court.
RIAC argues that under both state and municipal codes, the Warwick Fire Chief was the individual responsible for authorizing hot work. Thus, before undertaking construction, the general contractor was required to make application to the Warwick Fire Chief for necessary permits. According to RIAC, the Warwick Fire Chief had the authority to condition the issuance of the necessary permits on the requirement that Warwick Firefighters act as fire watchers during any hot work. RIAC argues that state law rendered the dispute non-arbitrable because there was a direct conflict between the claimed contractual rights of the Union and state law. RIAC insists that state law empowers the State Fire Marshall, through his local designee, the Municipal Fire Chief, to determine how hot work will be done on state properties in Warwick. Furthermore, RIAC also alleges that the CBA does not entitle Airport Firefighters to perform fire watch work for the construction project at issue. With respect to the Arbitration Award addressing the appropriate remedy, RIAC argues that it should not be required to pay damages because its actions were done in good faith. RIAC also argues that the Arbitration Award essentially requires RIAC to pay twice for the same work. *Page 4 
Council 94 argues that no applicable law or code created any direct conflict which prevented RIAC from abiding by the CBA. It alleges that there is no statutory or municipal code language which requires RIAC to use the Warwick Fire Department to perform fire watches. Council 94 also indicates that the Arbitrator had already addressed RIAC's arguments with respect to the Award, and there is no reason to disrupt his decision.
 II. Standard of Review
At the outset, this Court is well aware that "[t]he limited scope of judicial review of arbitration awards by the Superior Court is essential to ensure that parties may benefit from arbitration as an informal, expedient alternative to litigation in the court system."Purvis Systems, Inc. v. American Systems Corp.,788 A.2d 1112, 1118 (R.I. 2002). "Public policy favors the finality of arbitration awards, and such awards enjoy a presumption of validity." City of East Providence v. International Associationof Firefighters Local 850, 982 A.2d 1281, 1285 (R.I. 2009). Thus, the Court reviews "arbitral awards under an exceptionally deferential standard[.]" North ProvidenceSchool Committee v. North Providence Federation of Teachers,Local 920, 945 A.2d 339, 347 (R.I. 2008). Courts must vacate arbitral awards in the following circumstances:
 (1) When the award was procured by fraud.
 (2) Where the arbitrator or arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award upon the subject matter submitted was not made.
 (3) If there was no valid submission or contract, and the objection has been raised under the conditions set forth in § 28-9-13. G.L. 1956 § 28-9-18(a). *Page 5 
An arbitrator exceeds his authority under section 28-9-18(a)(2) when the award does not "draw. . . its essence from the collective-bargaining contract or is not based on a pass[a]bly plausible interpretation thereof[.]" Rhode Island Brotherhood ofCorrectional Officers v. Department of Corrections,707 A.2d 1229, 1234 (R.I. 1998) (internal quotations omitted).
Even if the arbitrator makes a mistake in interpreting the law, the Court will uphold the arbitral award. Cityof East Providence, 982 A.2d at 1285. However, "if the arbitrator manifestly disregard[s]" the law or arrives at an irrational result, the Court will vacate the arbitral award. Id. at 1286. A manifest disregard of the law is more than a mere error in the law or failure to understand or apply the law correctly.Id.
Before this Court must give an Arbitration Award such strong deference, it must be determined that the subject matter is properly subject to arbitration. See Vose v. Rhode Island Broth. ofCorrectional Officers, 587 A.2d 913, 913 (R.I. 1991). "If the dispute is non-arbitrable, then the award must be vacated in accordance with § 28-9-18(a)(2). In contrast, if the arbitrator decides an arbitrable grievance and there is no other basis upon which to vacate the award, it must be confirmed." StateDepartment of Administration v. Rhode IslandCouncil 94, A.F.S.C.M.E., AFL-CIO, 925 A.2d 939, 944 (R.I. 2007). "[S]tatutory obligations cannot be bargained away via contrary provisions in a CBA . . . [a]nd they certainly cannot be negated by an arbitrator who purports to do so through the medium of `contract interpretation.'" State v. Rhode Island Alliance of SocialServices Employees, Local 580, 747 A.2d 465, 469 (R.I. 2000). However, "for the state to be excused from compliance with the CBA, there must be a direct conflict between the language of the relevant statute and the CBA. . . ." State Department ofAdministration, 925 A.2d at 944-45. *Page 6 
 III. Analysis
a. Arbitrability
"When uncertainty exists about whether a dispute is arbitrable, this Court, like the United States Supreme Court, `has enunciated a policy in favor of resolving any doubt in favor of arbitration.'"School Committee of Town of North Kingstown v. Crouch,808 A.2d 1074, 1078 (R.I. 2002) (citing Brown v. Amaral,460 A.2d 7, 10 (R.I. 1983)). Here, RIAC claims that the dispute is not arbitrable because there are direct conflicts between the claimed contractual rights of the Union and the fire code and enforcement powers of the State Fire Marshall. RIAC essentially argues that external laws require the involvement of the Warwick Fire Department, and that the CBA could not effectively bargain away this obligation. Arbitrator Katz reviewed the statutory and municipal fire codes and determined that there was no language requiring the Airport to use the Warwick Fire Department to perform fire watches.
"To determine whether a direct conflict exists between [a] statute and the CBA that would preclude arbitration of this dispute, this Court examines the pertinent provisions of the CBA in light of the statute." State Department of Administration, 925 A.2d at 945. "[S]tate law will trump contrary contract provisions when the statute provides for nondelegable or nonmodifiable duties and responsibilities in connection with the functions of state government. But there must be a direct conflict between the statutory language and a competing contractual provision."Id. (internal citations omitted).
After reviewing the relevant statutory provisions, the municipal and fire codes, and the CBA, this Court agrees that the present dispute is arbitrable. Although the RIAC devoted significant portions of its brief to the arbitrability issue, it has failed to demonstrate that there is "a direct conflict between the language of the relevant statute and the CBA. . . ." State *Page 7 Department of Administration,925 A.2d at 45 (R.I. 2007) (emphasis added). No cited provision of the State's General Laws, Warwick's Municipal Code, or the National Fire Protection Association's Uniform Fire Code lead this Court to the conclusion that RIAC was required to use Warwick fire personnel for fire watches. RIAC failed to reference any applicable law which directly conflicts the notion that Airport Fire Fighters may perform fire watches. The Court agrees with the arbitrator's assessment that the fire codes
 [d]o not indicate that the municipal chief is the only person who can serve as the `permit authorizing individual' (`PAI'), for purposes of overseeing hot work and fire watches, or that firefighters from the municipal departments are the only individuals who may perform the fire watches. 2008 Award at 40.
As such, this Court determines that the dispute is substantively arbitrable and was properly before the arbitrator.
b. Merits
"[W]hen a party claims that [an] arbitrator[ has] exceeded [his] authority, the claimant bears the burden of proving this contention, and every reasonable presumption in favor of the award will be made." Feibelman v. F.O., Inc., 604 A.2d 344, 345 (R.I. 1992) (quoting Coventry Teachers' Alliance v. CoventrySchool Committee, 417 A.2d 886, 888 (R.I. 1980)). "Public policy favors the finality of arbitration awards, and such awards enjoy a presumption of validity." City of East Providence InternationalAssociation of Firefighters, 982 A.2d at 1285 (citingPierce, 875 A.2d at 426).
After determining that the dispute was arbitrable, the arbitrator was confronted with a relatively simple issue: did the use of non-bargaining unit employees to perform fire watches violate the CBA? Here, in the First Award, the Arbitrator determined that Articles 33 and 37, as *Page 8 
well as Addendum IV, of the CBA protect bargaining unit work. He examined the language of the contract and applied the facts to determine that there was a violation of the CBA. The arbitrator determined that the CBA limits the use of subcontractors to perform bargaining unit work "insofar as is practicable." See CBA Art. 33.1. In the event that it is not practicable to use bargaining unit employees, Article 33.2 of the CBA sets forth a procedure that must be followed. According to the Arbitrator, it was never determined that avoiding the use of subcontracted labor was impracticable, and the procedure set forth in Article 33.2 was never followed. See 2008 Award at 42-43. In short, the Arbitrator's Award drew its essence from the contract and was a passably plausible interpretation of the intention of the parties as contained in their agreement. Moreover, "when a party claims that [an] arbitrator [has] exceeded [his] authority, the claimant bears the burden of proving this contention, and every reasonable presumption in favor of the award will be made."Feibelman v. F.O., Inc., 604 A.2d 344, 345 (R.I. 1992) (quoting Coventry Teachers' Alliance v. CoventrySchool Committee, 417 A.2d 886, 888 (R.I. 1980)). This Court finds that RIAC has not met this high burden, and therefore holds that the arbitrator was well within his power and authority when making the First Award.
The Arbitrator's second Award resolved the parties' dispute with respect to the appropriate remedy. "As long as the award draws its essence from the contract and is based upon a passably plausible interpretation of the contract, we shall uphold it."Smithfield v. Local 2050, 707 A.2d 260, 264 (R.I. 1998) (internal quotation omitted). In his decision, the arbitrator responded to RIAC's argument that, because it had acted in good faith, it should not be required to pay a monetary award. After "review[ing] the treatise and cases cited by [RIAC]" the Arbitrator concluded that the Firefighters "should be afforded a traditional and customary make-whole remedy for their lost overtime opportunities." (2009 Award at 5). The arbitrator indicated *Page 9 
that because such a remedy is compensatory rather than punitive, a `good faith' claim would not provide justification for depriving the Firefighters of traditional relief. See Id. at 6. The Arbitrator also addressed RIAC's contention that such an award would require it to pay twice for the same services. Because the alternative would be to deny the grievants of an effective remedy, and because the parties "had negotiated a contractual provision, protecting the work, which was violated by the RIAC," the Arbitrator dismissed the RIAC's argument. See Id. at 6-7. Casting "every reasonable presumption in favor of the award," this Court finds that the arbitrator properly constructed an award that draws its essence from the collective bargaining agreement.Feibelman, 604 A.2d at 345 (quoting Coventry Teachers'Alliance, 417 A.2d at 888). This Court reviews "arbitral awards under an exceptionally deferential standard," and is unable to find that the Arbitrator exceeded his authority when crafting this appropriate remedy. North Providence School Committee,945 A.2d at 347 (R.I. 2008). As such, the Court declines to vacate the award.
 IV. Conclusion
Based on the foregoing, this Court confirms the arbitration awards in their entirety. The dispute was arbitrable because there is no law which directly conflicts with the Union's claimed contractual rights. Moreover, because the Awards each draws their essence from the CBA and do not manifestly disregard it, they must be upheld.