STATE of Rhode Island et al.

v.

John J. PARTINGTON et al.

No. 2003–142–Appeal.

Supreme Court of Rhode Island.

May 3, 2004.

Richard B. Wooley, for Plaintiffs.

Peter A. Clarkin, Gary T. Gentile, Warwick, for Defendants.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

## OPINION

PER CURIAM.

Thomas A. Phelps (Phelps) and the Town of East Greenwich (East Greenwich) appeal from the Superior Court's grant of summary judgment in favor of the State of Rhode Island (state) and Anthony J. Silva (Silva).[1] Phelps and East Greenwich (collectively, defendants) ask this Court to give its imprimatur to an arrangement struck between East Greenwich and the City of Providence (Providence) allowing Phelps to be trained at the Providence Police Training Academy (Providence academy). The state and Silva, in his capacity as chairman of the Police Officers' Commission on Standards and Training, (collectively, plaintiffs) argue that the ar-

---

1. By operation of Rule 25(d) of the Superior Court Rules of Civil Procedure, the successors to the East Greenwich chief of police and town council president are automatically substituted for the prior office holders.

rangement is in derogation of G.L.1956 §§ 42–28.2–6 and 42–28.2–10(f), and ask this Court to affirm the judgment of the Superior Court.

This case came before the Supreme Court for oral argument pursuant to an order directing the parties to show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of the litigants and examining the record and the memoranda filed by the parties, we are of the opinion that cause has not been shown, and we summarily affirm the judgment entered in the Superior Court.

**Facts and Procedural History**

The facts of this case are not in dispute. The present controversy arose in 1999, when Phelps, who then was serving as a probationary police officer with the East Greenwich Police Department, attended the Rhode Island Municipal Police Training Academy (the municipal academy) to become eligible for permanent employment as a police officer. Although his marks at the municipal academy generally were very high, he was unable to complete the swimming test successfully. He therefore did not meet the minimum standards promulgated by the commission on standards and training (the commission) pursuant to § 42–28.2–8, and was unable to be certified. Notwithstanding Phelps's lack of aquatic aptitude, East Greenwich was keen to hire him; he was considered an "exemplary employee" and had achieved a measure of notoriety for a previous heroic act.[2]

To remedy this problem, East Greenwich looked to the Providence academy, which did not require its candidates to pass a swim test to be certified. Accordingly, the East Greenwich chief of police sent a request[3] to the Providence chief of police asking that the Providence academy accept Phelps to begin recruit training. The Providence academy agreed on the condition that East Greenwich execute a Release and Indemnification Agreement. The town accepted and informed Phelps that it would sponsor his attendance at the January 2000 session of the Providence academy. Phelps assented to the arrangement. He successfully completed the Providence academy training program, served one year as a probationary police officer, and now serves as a regular member of the police department.

East Greenwich did not seek or obtain approval from the commission before entering into the agreement with Providence. However, East Greenwich did notify the commission that the town intended to send Phelps to the Providence academy. The commission responded by informing East Greenwich that "any agreement between municipalities for the training of police officer candidates at a facility other than the Municipal Police Training Academy must be approved in advance by this Commission." The commission also informed East Greenwich that such approval is discretionary and that the alternate training facility must be certified by the commission. The commission further informed East Greenwich that the Providence academy had not been certified, and that if it went ahead with its agreement, then "this police officer candidate [Phelps] will not be

---

**2.** Apparently, he had been able to coax an individual from jumping off the Route 2 bridge onto Route 4.

**3.** In a previous letter from the East Greenwich Town Manager, William Sequino, Jr., to the town council, Sequino acknowledged that

since the proposed agreement between East Greenwich and the Providence academy "is the second instance of police bypassing the Police Academy, we will probably receive opposition from them, too."

eligible for continued or permanent employment as a police officer in the Town of East Greenwich upon graduation." The commission also warned that if East Greenwich pursued its plan with Providence that the attorney general, acting on behalf of the commission, would "seek declaratory injunctive relief against the Town of East Greenwich, the City of Providence and Thomas A. Phelps."

This was no idle threat, for on January 31, 2001, plaintiffs did file a complaint pursuant to the Uniform Declaratory Judgments Act, G.L. 1956 chapter 30 of title 9. The plaintiffs sought, *inter alia*, a declaration that the commission serves as the governing authority over all matters concerning municipal police training within the State of Rhode Island, except the City of Providence, and that any probationary officer, including Phelps, is required by statute to attend the municipal academy. Included in the commission's prayer for relief was the following count: "5. Declare prospectively, as a matter of law, whether the City of Providence Police Academy must be certified by the Commission * * * before its officials may enter into any agreement for the use of the Providence Police Academy by any Rhode Island Municipality." The commission also sought injunctive relief preventing training arrangements in contravention of § 42–28.2–6 and § 42–28.2–10(f).[4]

East Greenwich answered the complaint by disagreeing with the commission's interpretations of the relevant statutes and by pleading the affirmative defense of es-toppel and asserting that the commission lacked authority over its agreement with Providence concerning Phelps's training. Providence answered the complaint asserting similar defenses.

Phelps answered the complaint along similar lines and counterclaimed that chapter 28.2 of title 42 violated his right to equal protection under article 1, section 2, of the Rhode Island Constitution and the Fifth and Fourteenth Amendments to the United States Constitution. Phelps also requested that the court declare chapter 28.2 of title 42 unconstitutional. Phelps further requested a declaration that upon his successful completion of the Providence academy, he could be hired by East Greenwich as a police officer. Finally, he requested costs and attorney's fees.

In January 2002, the attorney general and the commission moved for summary judgment on their request for declaratory and injunctive relief. The defendants objected to the motion and filed a cross-motion[5] for summary judgment. The motions were heard in October and December 2002, after which the motion justice granted summary judgment for the state. She relied heavily on the language from our opinion in *Vierra v. Rhode Island Municipal Police Academy*, 539 A.2d 971 (R.I. 1988), which refers to training in the municipal academy as mandatory for all police officers, except for those training for hire by Providence. Final judgment for plaintiffs was entered pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure, and defendants timely appealed.[6]

---

**4.** We failed to find a record that an injunction had been issued either at the summary judgment hearing or in the docket of this case. Rule 65(d) of the Superior Court Rules of Civil Procedure requires that "[e]very order granting an injunction * * * shall be specific in terms." Accordingly, because no injunction is before us, we do not reach this issue.

**5.** Phelps did not file a separate cross-motion for summary judgment but, in his objection to plaintiffs' motion for summary judgment, requested that the court grant summary judgment for East Greenwich.

**6.** The City of Providence did not participate in the appeal.

## Discussion

The issue before us is whether potential police officers in Rhode Island *must* pass the course of training at the municipal academy or some other facility approved by the commission. "This Court, as the ultimate arbiter of state law, conducts a *de novo* review of a trial justice's interpretation of a statute." *Champlin's Realty Associates, L.P. v. Tillson*, 823 A.2d 1162, 1165 (R.I.2003) (citing *Town of Warren v. Thornton–Whitehouse*, 740 A.2d 1255, 1259 (R.I.1999)). "When interpreting a statute, our ultimate goal is to give effect to the Legislature's intention." *Id.* "In doing so, this Court applies the well-established rule of construction that, when words in a statute are unambiguous, they must be given their plain, ordinary, and usually accepted meaning." *Id.* (citing *Pier House Inn, Inc. v. 421 Corporation, Inc.*, 812 A.2d 799, 804 (R.I.2002)). When a statute is ambiguous, however, we must apply the rules of statutory construction and examine the statute in its entirety in order to determine the intent and purpose of the Legislature. *Direct Action for Rights and Equality v. Gannon*, 819 A.2d 651, 659 (R.I.2003).

In this case, the intent of the Legislature is manifest. Section 42–28.2–1 states:

> "**Legislative declaration of intent.**— The legislature hereby finds and declares that police work, a basic adjunct of law enforcement, is professional in nature, requiring proper educational and clinical training in a state as densely populated as Rhode Island; that in our free society, better law enforcement can be achieved through higher standards of efficiency in police work than in retributive measures against those who commit crime; that the protection of the health, safety, and welfare of our citizens, can best be met by the creation of an educational training and recruitment program for persons who seek careers as police officers in order that such persons while serving in a probationary capacity prior to permanent appointment will receive training at approved recruit and in-service training facilities; and that, by qualifying and becoming proficient in the field of law enforcement, those persons will individually and collectively better insure the health, safety, and welfare of the citizens of this state in their respective communities."

As is clear from the statute, the Legislature has determined that the health, safety, and welfare of our citizens are best protected by ensuring that prospective permanent police officers "receive training at *approved* recruit and in-service training facilities." *Id.* (Emphasis added.)

To effectuate the purposes of the statute and proficiency in law enforcement, the Legislature created the municipal academy, located at the state police academy in Foster, § 42–28.2–2, and established the commission on standards and training to promulgate mandatory training standards. Section 42–28.2–6 vests supervisory authority over the state police academy, "to the extent necessary to effectuate the purpose" of the statute, in the commission. It further provides that "[t]he commission may certify the training school of any municipality as it determines that the school has facilities and a program of training substantially comparable to those of the municipal police training school established by § 42–28.2–2." Section 42–28.2–6.

Section 42–28.2–8 requires the commission to prepare mandatory, minimum training standards relating to physical, educational, mental and moral fitness, attendance requirements, qualification for instructors, and basic training requirements. It also requires the commission to establish minimum standards for equipment and

facilities required at approved police training schools.

Section 42–28.2–10 delineates the discretionary powers of the commission; § 42–28.2–10(f) provides that the commission may "[a]pprove the use of training schools certified pursuant to § 42–28.2–6 by the departments of any municipality pursuant to an agreement between that municipality and the municipality operating the facility." As is clear from the plain language of the statute, approval of the use of a municipality's certified police training school by another municipality is completely discretionary with the commission.

Significant to the issues at hand, Providence is exempted from the statutory requirement. Section 42-28.2-2 states, "[t]here is hereby created and established a municipal police training school, for the use of all municipal police departments except the Providence police department." Nor are the mandatory training standards promulgated pursuant to § 42–28.2–8 applicable to Providence.

■ The defendants advance two arguments on appeal. First, they submit that the statute does not require attendance at the municipal academy, and second, given the fact that Providence is specifically exempt from the provisions of the statute, East Greenwich was free to enter into the agreement to train Phelps at the Providence academy.

In granting plaintiffs' motion for summary judgment, the motion justice found that *Vierra*, although not directly on point, was dispositive. The *Vierra* case involved a claim of sex discrimination against the municipal academy. Debra Vierra initially was sponsored at the municipal academy by the City of Newport. She, too, failed the swimming test and was dismissed from the program. She later was hired by the Town of Tiverton, and requested that she be allowed to return to the academy to complete only the swimming component of the program. Her request was denied, whereupon she obtained a temporary restraining order enjoining the academy from requiring her to take the full course. She then successfully completed the swimming test and obtained a permanent injunction enjoining the academy from refusing to issue her a certificate of graduation. *Vierra*, 539 A.2d at 972.

In *Vierra*, 539 A.2d at 972, we twice noted that attendance at the municipal academy is mandatory. In discussing her enrollment under the sponsorship of the Newport Police Department we said: "Graduation from the academy is a requirement for continued municipal employment." Further in the case, while discussing her hiring by Tiverton, we said: "As was the case with her employment with the Newport police, she was required to obtain a certificate of graduation from the academy in order to obtain permanent employment status." *Id.*

We agree with defendants that the motion justice's reliance upon *Vierra* was misplaced. The issue of mandatory attendance at the municipal academy was not the subject of the case, nor had it been argued by the parties. The above-cited statements are dicta, merely presented as background information, and have little or no precedential value. Nevertheless, after squarely addressing the issue, we come to the same conclusion.

Our task is to examine the statute in its entirety to discern and give effect to the intent and purpose of the Legislature, giving unambiguous words their plain, ordinary, and usually accepted meaning. "In construing statutes, [we] 'adhere[ ] to the basic proposition of establishing and effectuating the intent of the Legislature[, * * * which] is accomplished from an examination of the language, nature, and ob-

ject of the statute.'" *State v. Pelz*, 765 A.2d 824, 829–30 (R.I.2001) (quoting *Howard Union of Teachers v. State*, 478 A.2d 563, 565 (R.I.1984)).

The defendants argue that nowhere does the language of the statute specifically require attendance at the municipal academy. We conclude, however, that when viewed in its entirety, chapter 28.2 of title 42 evinces a clear legislative intent that, except for Providence, all persons who seek careers as police officers in the state attend, and graduate from, the municipal academy to ensure that they meet minimum proficiency standards. A municipality may seek commission certification to establish its own training school; the record below, however, indicates that no such certified training school currently exists.

We do not believe that the Legislature intended for the commission to promulgate a set of mandatory, minimum-training standards and supervise a training academy for the use of all municipal police departments except the Providence Police Department, only to allow these municipal police departments to circumvent the standards by sponsoring their probationary police officers at training facilities that may not subscribe to those standards. On the contrary, the commission is authorized to certify police training schools other than the municipal academy only "as it determines that the school has facilities and a program of training substantially comparable to those of the municipal police training school." Section 42–28.2–6.

In the exercise of its authority, the commission has determined that a certain level of swimming ability is a basic requirement for all law enforcement officers. Notwithstanding the fact that doubtless many fine police officers, including Phelps himself, may have lacked this particular skill, it is not difficult to understand why, in the Ocean State, the commission came to this determination. To allow a municipal police department to avoid this requirement by sending its probationary officers to a training program that does not have a swimming component would defeat the purpose of the statute.

We hold, therefore, that all municipal police departments other than Providence are required to send their probationary police officers to the municipal academy before such candidates become eligible for permanent employment as police officers, unless the commission has approved in advance an agreement for a police-officer candidate to train at another facility.

■ The defendants' second argument is similarly unavailing. They assert that the municipalities were free to enter into the agreement that they did because Providence is specifically excluded from the commission's purview, leaving any municipality free to send its probationary officers to the Providence academy. They maintain that it is "absurd to suggest that Providence Police Officers, who arguably face more challenges than the police officers of any other municipality in this state, receive training that is somehow less than those officers trained at the Rhode Island Municipal Training Academy."

We certainly do not suggest that the training at the Providence academy is any less rigorous than at the municipal academy.[7] Providence does not require proficiency in swimming, but its other training requirements may be comparable, or even superior, to that offered at the municipal

---

7. We do note, however, that in its memorandum to support its objection to plaintiffs' motion for summary judgment, the city averred that "attendance at and graduation from the Providence Police Training Academy is not intended to ensure or, in fact, qualify any individual for employment as a police officer."

academy. A comparison of the two training facilities is simply irrelevant to this case. Providence is exempt from the mandatory training standards, and is therefore able to establish its own standards, and implement its own curriculum at the Providence academy. All other municipal police departments, however, must comply with the uniform training standards established by the commission.

The municipal academy does require its trainees to pass a swimming test. Imposing such a requirement is consistent with § 42–28.2–8(b), which gives the commission authority to "establish the courses of training, and set rules and regulations relative to the education, *physical standards,* and personal character of candidates and trainees." (Emphasis added.) East Greenwich attempted to elude this requirement for probationary officer Phelps by sending him to the Providence academy. This is exactly the kind of avoidance of mandatory, uniform training standards that § 42–28.2–10(f) is intended to prevent. We hold that agreements between municipalities to send police recruits to any training facility other than the municipal academy must receive commission approval before the agreement is ratified and the candidate is trained.

Further, defendants argue that the commission cannot have sole discretion to approve training arrangements between Providence and other municipalities because "a number of the present police chiefs serving in the State of Rhode Island in municipalities other than Providence, were trained at the Providence Police Training Academy." The defendants' assertion is misleading. The issue of police chiefs is not before us. The fact that a number of municipalities have appointed as police chief individuals who were trained at the Providence academy speaks highly of the academy and, presumably, the experience gained serving as a police officer in the capital city. Chapter 28.2 of title 42 is aimed at "persons who seek careers as police officers in order that such persons while serving in a probationary capacity prior to permanent appointment will receive training" in order to "better insure the health, safety, and welfare of the citizens of this state." Section 42–28.2–1. The experience and judgment of a probationary officer at the infancy of his career are obviously quite different from a potential police chief with an established record of service.

■ Finally, defendants assert that "there are presently at least two officers serving in the Pawtucket Police Department who were trained in exactly the same manner as Phelps," and submit that "it is inappropriate at this point, given that Phelps is now serving as a member of the Police Department in the Town of East Greenwich, to selectively seek to enforce these provisions which the Commission claims are mandatory." In response, plaintiffs cast the issue as one of equal protection. Indeed, the record indicates that Phelps, in his memorandum of law to support his objection to plaintiffs' motion for summary judgment, argued in greater depth that plaintiffs' interpretation of chapter 28.2 of title 42 would lead to a finding that the statute violated the equal-protection clauses of the state and federal constitutions. It does not appear, however, that the motion justice addressed the equal-protection argument during the summary judgment hearing. Presumably, this is a claim, initially raised by Phelps by way of counterclaim, left unresolved by the Rule 54(b) judgment.

■ A person bringing a selective enforcement claim must show that the decision to treat him or her differently from others "is wholly 'arbitrary or irrational.'" *Wojcik v. Massachusetts State Lottery*

*Commission,* 300 F.3d 92, 104 (1st Cir. 2002). The United States Supreme Court has said:

"The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination." *Snowden v. Hughes,* 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1944).

Here, the factual issues necessary for a determination of the claim—specifically whether Phelps was treated differently from similarly situated individuals and, if so, whether that treatment was arbitrary and irrational—were not resolved at the hearing on the motion for summary judgment.

Moreover, it appears from the transcripts that the motion justice limited her ruling merely to the issue of the rights of the parties under the statute, and reserved the factual questions involved in the equal protection/selective-enforcement claims for a different occasion. At the conclusion of the hearing on December 10, 2002, the motion justice defined her function at that hearing as follows:

"It's my function at this point in time to declare the rights of statute and other relationships between the parties. It does not appear to me to be a question that is fact intensive. While there may be some facts in dispute, and those facts may be significant to the parties for other issues or other causes of action that may be raised by Mr. Phelps, I don't think they are pertinent to this particular decision. And I think counsel will agree we are specifically talking about the interpretation of statutory language."

We conclude that the selective enforcement and implicit equal-protection issues advanced by the defendants on appeal are not properly before us at this time, and we therefore decline to apply an equal-protection analysis.

## Conclusion

For the reasons stated herein, the judgment of the Superior Court is affirmed. The record in this case shall be returned to the Superior Court.