May 18, 2018

Community College of Rhode Island et al. :

               v. :

CCRI Educational Support Professional :
Association/NEARI.

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Community College of Rhode Island et al.    :

v.    :

CCRI Educational Support Professional    :
          Association/NEARI.


Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Flaherty, for the Court.**  The defendant, CCRI Educational Support Professional Association/NEARI (the union), appeals to this Court after a justice of the Superior Court vacated an arbitration award that reinstated the grievant, Michael Crenshaw, to his position as a Campus Police Officer for the plaintiff, the Community College of Rhode Island.  Significantly, Crenshaw was allowed to continue in his employment for nearly a year without completing the statutorily required police training academy or receiving a waiver from having to do so.  When his application for a waiver eventually was not approved, the college terminated his employment, precipitating a grievance by the union, which ultimately prevailed at arbitration; the college was ordered to reinstate Crenshaw to his position and compensate him for lost time.  The college petitioned the Superior Court to vacate the award, and it did.

This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided.

- 1 -

After considering the parties' written and oral submissions and after reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

### A

### The Hiring and Firing

In July 2013, Michael Crenshaw applied for a position as a Campus Police Officer at CCRI, a position that falls within the Merit System, G.L. 1956 chapter 4 of title 36.[1] Before that, after graduating from the Massachusetts Police Academy, Crenshaw had been a police officer in the Southborough Police Department. He was terminated from that position and applied to CCRI a year and a half later.

On November 8, 2013, CCRI extended an offer of employment to Crenshaw, conditioned on his successful completion of the Rhode Island Municipal Police Training Academy. The collective bargaining agreement (CBA) then in effect between the college and the union provided for a mandatory 130-day probationary period for new hires, which entailed supervisor evaluations every two months. During the probationary period, an employee would serve at the pleasure of the college and he could be terminated for any reason. However, the agreement provides that if a probationary employee is not notified in writing before the expiration of the 130-day period that his services are no longer desired, the employee "shall be continued in their

---

[1] The papers in this case refer to the position as "Campus Police Officer" and "College Police Officer" interchangeably. We will use the former title, as the trial justice did.

employment." Significantly, at that point in time, the CBA provides that employees can be disciplined only for just cause.

When Crenshaw began working on November 17, 2013, the condition of his continued employment was that he complete the academy; there was no mention in the conditional offer of the possibility of a waiver from that requirement. Indeed, the education and experience qualifications that were outlined in the job description itself called for him to "satisfactorily complete the * * * Academy curriculum * * *." However, according to Crenshaw, when he interviewed for the position, he was informed that the college preferred applicants who had already completed a training curriculum elsewhere, because that enabled the employees to obtain a waiver from having to complete the twenty-two-week academy.

The procedure for obtaining such a waiver was set forth in the Rhode Island Department of Public Safety's General Order 2.100, entitled "Basic Recruit Officers Program Waiver," which bore an effective date of July 15, 2013.[2] The General Order provided that, "upon receiving a conditional offer of employment and the sponsorship from a Rhode Island Law Enforcement agency[,]" an out-of-state police officer "shall seek a Basic Recruit Officers Program Waiver from the [Rhode Island Police Officers Commission on Standards and Training] prior to permanent employment as a police officer." The order then goes on to state that the sponsoring agency—in Crenshaw's case, the CCRI campus police department—shall submit the

---

[2] This Court is perplexed and troubled that an incorrect version of the General Order was submitted to the arbitrator and later to the trial justice. It is clear that both were presented with an inaccurate or outdated version of the order. That version contained an additional clause (clause E), not present in the correct version, which would have had a significant—perhaps even determinative—impact on Crenshaw's qualification for a waiver. This development is concerning, to say the least. For purposes of our recitation of the facts and travel pertinent to the present appeal, we will employ what is apparently the correct version of General Order 2.100, which was effective July 15, 2013. To be abundantly clear, we will not be considering the disputed "clause E" in our *de novo* review of arbitrability in this case.

waiver request in writing to the Executive Director of the academy, along with the prospective waiver candidate's previous training certification and other relevant training documentation. The Executive Director then notifies the Chairman of the commission of the waiver request. The candidate himself must complete an application for the waiver, and he must have completed all entry standards required of academy candidates. Finally, the Executive Director appoints academy staff to review the submitted training materials and ensure compliance with all requirements; if there is a shortcoming, a notification is sent to the sponsoring agency.

Crenshaw was presented with and signed a request for a waiver from the academy on May 14, 2014. A mere three days later, May 17, 2014, his 130-day probationary period concluded. It is noteworthy that, during his probation, Crenshaw received high scores on three evaluations by his supervisor, Captain Timothy Poulin. Captain Poulin also completed a background investigation on Crenshaw, which he summarized in a May 30, 2014 report. That investigation uncovered that Crenshaw had had his firearms license revoked in 2012 as a consequence of his self-reported addiction to a controlled substance; that Crenshaw had been deemed unfit for duty following a psychological evaluation in 2012 while employed by the Southborough Police Department; and that he had been arrested in 1993 and received a traffic violation in 2005, both of which had been dismissed. Nevertheless, apparently satisfied by his discussions with Crenshaw, Capt. Poulin, on August 18, 2014—well after the expiration of Crenshaw's probationary period—submitted the waiver request that Crenshaw had signed months earlier.

The Executive Director of the academy, Lieutenant Scott Raynes, appointed the Department of Public Safety's General Counsel, Lisa Holley, to review Crenshaw's application. On October 21, 2014, Holley wrote to Lt. Raynes, stating that "I would not recommend that you

approve this Waiver * * *. Nothing, however, shall preclude Officer Crenshaw from reapplying once these issues are resolved to the satisfaction of the Commission." The issues specified by Holley largely mirrored those uncovered as a result of Capt. Poulin's investigation. Holley delineated a number of concerns as bases for her adverse recommendation: (1) there was insufficient information in the application to determine if Crenshaw's termination from the Southborough Police Department in 2012 would result in his placement in the National Decertification Index,[3] which would make him ineligible for a waiver; (2) Crenshaw failed to list his arrest and traffic violation on the waiver application, and he also did not disclose the latter infraction to the psychologist who interviewed him as part of the waiver process; (3) Crenshaw's self-reported substance abuse and psychological issues caused his license to carry a firearm to be revoked in 2012, and he did not provide the waiver-process psychologist with updated medical records; and (4) Crenshaw received a below-average psychological rating, which would not, in the absence of a specific request from the chief of the sponsoring department, be acceptable for admission to the academy. Lieutenant Raynes delivered the letter from Holley to Capt. Poulin. The college then notified Crenshaw that his application for a waiver had been denied, and he had therefore failed to satisfy the conditions of employment. Thus, CCRI scheduled a pretermination hearing.

At that hearing, which took place on November 5, 2014, CCRI allowed Crenshaw and his union representative to have access to the Holley letter. However, the college refused to show Crenshaw the waiver application that it had submitted to the academy on his behalf. Undeterred, Crenshaw availed himself of the opportunity to respond to each issue raised by Holley as

---

[3] The National Decertification Index is a web-based registry in which participating agencies can record certificate or license revocations stemming from police misconduct. Its purpose is to enable police departments to investigate the qualifications of prospective employees who were initially certified in other jurisdictions.

follows: (1) his termination from the Southborough Police Department was, in his view, wrongful and would be the subject of litigation; (2) he was not eligible for placement in the NDI; (3) he did not understand that he had been arrested in 1993 because he had merely received a summons for charges that were dismissed, and the traffic violation in 2005 was actually issued to his girlfriend and also was dismissed; (4) he became dependent on prescription opioids after an injury that he had suffered while at the Massachusetts Police Academy, and he received treatment for his addiction until 2011, after which he passed drug tests; (5) the examining psychologist told him that his psychological rating was within the qualifying parameters; and (6) he had given CCRI a waiver to obtain his medical records because he had been unaware that he was supposed to supply them.

Notwithstanding Crenshaw's attempts to mitigate the concerns raised in Holley's recommendation, the college undertook no further investigation into his explanations and did not communicate those responses to the academy. Rather, CCRI focused simply on Crenshaw's failure to obtain a waiver in lieu of attending and completing the required police training. Consequently, on November 21, 2014, CCRI terminated Crenshaw effective December 5, 2014, because he had not successfully completed all phases of the recruit selection process— specifically, because his waiver application had not been approved. The union filed a grievance on Crenshaw's behalf, alleging that CCRI had denied Crenshaw—now, by the terms of the CBA, a nonprobationary employee—due process by refusing to show him the waiver application that Capt. Poulin had submitted to the academy. The college denied the grievance, and arbitration eventually ensued.

## B

## The Arbitration

Before the arbitrator, the college first argued that the dispute was not subject to arbitration. This was so, the college maintained, because the requirement of academy training or waiver therefrom was set forth in the job description and thus was not subject to arbitration, as that requirement had been imposed by state law, which cannot be contravened by contrary CBA provisions or arbitration awards. The college also argued that, in the event the dispute was deemed to be arbitrable, Crenshaw's failure to obtain a waiver constituted just cause for his termination. Moreover, the college asserted that it had afforded Crenshaw due process by providing him with a hearing, allowing him to respond to the college's concerns, and sharing the Holley letter with him.

To the contrary, the union argued that the grievance was arbitrable because the arbitrator was not being asked to contravene the statutory academy requirement. Rather, the union argued that it was seeking to enforce the just cause and due process protections to which Crenshaw was entitled under the CBA. Those protections, the union contended, required the college to share with Crenshaw any evidence that could impact the termination decision, including the waiver application that CCRI submitted to the academy on Crenshaw's behalf. Furthermore, the union claimed that due process concerns required that the college take reasonable steps to investigate or communicate to the academy the responses to Holley's concerns that Crenshaw had raised at the pretermination hearing.

The arbitrator first addressed the question of arbitrability. He began by noting that "[i]t is undisputed that the job description is not subject to amendment by an arbitrator nor by [CCRI]. The Academy requirement is contained in the job description which in turn flows from state

statute and regulations which set forth the procedure to change it." Nonetheless, the arbitrator did not interpret the grievance as seeking to ignore or bypass the academy requirement set forth in the job description. Rather, in his view, the union was alleging that the college violated the CBA by failing to afford Crenshaw due process when it terminated him for his failure to complete that requirement. The arbitrator concluded that "[t]he Union's grievance alleging violation of specific provisions of the Agreement is substantively arbitrable because it does not seek to amend the job description but, rather, seeks to enforce specific Contract language."

Proceeding to review the disputed termination on its merits, the arbitrator first settled the question of Crenshaw's employment status. Because the CBA forbade the college from negotiating directly with an employee, and because the union did not negotiate the conditional offer of employment, the arbitrator ruled that it was not enforceable. Yet, the arbitrator nonetheless acknowledged that Crenshaw's employment "was unusual because he passed probation without fully qualifying for the position by meeting the Academy requirement in the job description. Since the Academy requirement must be met, effectively it is a condition of [Crenshaw's] employment." Reasoning further, the arbitrator determined that, on day 131 of his employment, after receiving "three excellent evaluations" during his probationary period, Crenshaw "became a regular employee eligible for the Contractual protections, including due process and just cause."

The arbitrator then decided that Crenshaw had not been afforded the benefits of those contractual protections. Citing *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), the arbitrator wrote that "[d]ue process requires notice and an opportunity to respond before firing an employee and depriving him of his property interest in his job." As the arbitrator saw it, the college's refusal to show Crenshaw the waiver application "unfairly hobbled his

ability to respond to the questions in the Holl[e]y letter." This was so because Crenshaw claimed to have identified a "litany of errors" in Capt. Poulin's background investigation that had been submitted with the application. And, because the arbitrator interpreted the "discipline" contemplated by the CBA to include termination, he concluded that Crenshaw could be fired only for just cause. Because he believed that the CBA required fair treatment, the arbitrator concluded that the college did not have just cause to terminate Crenshaw. Crenshaw was entirely dependent on CCRI to sponsor his waiver from or admission to the training academy, so the arbitrator reasoned that the college had an obligation to investigate Crenshaw's responses to the concerns raised in the Holley letter and, if true, to share the same with the academy. The arbitrator determined that, when the college did neither, it violated Crenshaw's contractual right to be disciplined only for just cause. After all, the arbitrator noted, the Holley letter had left open the possibility for Crenshaw to reapply for a waiver from the academy or apply for training there. As a remedy, in accordance with the CBA, the arbitrator ordered that Crenshaw be reinstated to his position and compensated for lost time.

## C

### The Superior Court Review

The college filed a petition to vacate the arbitration award in the Superior Court. The union objected to that motion and moved to confirm the award. As a threshold matter, CCRI again argued that the dispute was nonarbitrable. The college claimed that it had no authority under the Merit System to change the job requirements and that, in Crenshaw's case, receiving a waiver from the academy requirement was a prerequisite imposed by state law, which the arbitrator had no authority to circumvent. Thus, Crenshaw's lack of a statutorily imposed qualification was not subject to arbitration. The college also argued that the award was irrational

because it reinstated an employee who could not meet the minimum qualifications for the position.

On the other hand, the union maintained that Crenshaw was not unqualified because the Holley letter could not be read as an outright denial of the waiver application. Indeed, it left him with the option to reapply. Moreover, the union maintained that the dispute was arbitrable in light of the "enhanced status" that Crenshaw attained when he successfully completed his probationary period and became, under the specific terms of the CBA, a permanent employee.

In a written decision dated May 10, 2016, the trial justice agreed with the college that the dispute was not arbitrable. She determined that Crenshaw was unqualified by statute because he had neither completed the academy nor obtained a waiver. The trial justice viewed the arbitrator's interpretation of the CBA as negating the statutory prerequisite for out-of-state police officers to receive a waiver from the academy before becoming eligible for permanent employment in Rhode Island. She wrote that, by the arbitrator's reasoning, "CCRI could ignore the Academy requirement indefinitely by allowing its police officers to remain on the job after the expiration of the probationary period with the contractual protections of employees." In other words, because the grievance arose from Crenshaw's failure to meet the minimum statutory qualifications of the job, and not from the provisions of the CBA, it was not subject to arbitration. The trial justice also concluded that the arbitration award restoring Crenshaw to the position of Campus Police Officer was irrational and manifestly disregarded a statutory requirement. Accordingly, the trial justice granted the college's motion to vacate the arbitration award, and she denied the union's motion to confirm the same.

Following the issuance of the trial justice's decision, the union filed a motion for reconsideration. It did so because it had discovered that the General Order cited to, and quoted

from, in the trial justice's decision was actually an incorrect version of the order. The order referred to by the trial justice, which had apparently been part of the record at the arbitration, contained a clause no longer present in the General Order that was in effect during the time of Crenshaw's employment. That former section provided: "All waiver candidates shall be a non-probationary officer in good standing with their current police department/employer." In fact, Crenshaw had been terminated by the Southborough Police Department well before his employment by CCRI, so the trial justice remarked that he obviously did not meet that condition precedent for a waiver and hence was not qualified for permanent employment under state law.

Upon learning that that requirement had been erroneously imposed, the union asked the trial justice to vacate her decision. In a bench decision, the trial justice assured the union that the incorrect General Order had not served as the basis for her decision, but rather, she had simply laid out its requirements in comprehensively reciting the facts and travel of the case. She also observed that Holley had undoubtedly relied on the correct General Order when she rendered her recommendation to the academy. Although the trial justice was "troubled by receiving an inaccurate record[,]" she concluded that "the discrepancy was not material to [her] decision that the dispute was not arbitrable," and she therefore denied the union's motion for reconsideration. The union timely appealed to this Court.

## D

### The Appeal

In our opinion, the arbitrability of the dispute between CCRI and Crenshaw is the nub of this appeal. The union maintains that the grievance was substantively arbitrable because there is no conflict between state law and the CBA, and thus the trial justice erred by determining otherwise. As the union sees it, the requirement that Crenshaw complete the academy or receive

a waiver therefrom did not excuse the college from its duty to give Crenshaw the pretermination due process to which he was entitled as a nonprobationary employee. The union further argues that, if this Court were to determine that the matter was indeed arbitrable, we should uphold the arbitration award on the merits. As a secondary, related issue, the union argues that the trial justice erred when she denied its motion for reconsideration. The union claims that the trial justice clearly relied on an incorrect General Order in finding the grievance to be nonarbitrable, and, therefore, she should have vacated her decision and addressed whether the award should be confirmed on the merits.

The college asserts that the trial justice was correct in concluding that the dispute was not arbitrable. According to CCRI, state law prohibits Crenshaw from holding the position of Campus Police Officer because he does not meet the statutory requirements for the position. Therefore, the college argues that the pretermination due process sought by the union and the reinstatement awarded by the arbitrator are legal nullities.

## II

### Standard of Review

Generally, "judicial authority to review the merits of an arbitration award is very limited[,]" and absent very limited circumstances, the award will be upheld. *Rhode Island Brotherhood of Correctional Officers v. State Department of Corrections*, 707 A.2d 1229, 1234 (R.I. 1998). "However, notwithstanding this circumscribed standard of review, an arbitration award will be vacated if * * * the issue determined was not arbitrable in the first place, * * * or if the arbitrator has otherwise exceeded his or her powers, G.L. 1956 § 28-9-18(a)(2)[.]" *Id.* "[A]n arbitrator may exceed his or her powers by interpreting a CBA in such a way that it contravenes state law or other public policies that are not subject to alteration by arbitration." *Id.* And, of

- 12 -

course, "an arbitrator is powerless to arbitrate that which is not arbitrable in the first place." *Id.* "In these instances we do not apply the more deferential standard accorded to an arbitrator's interpretation of a CBA on its merits; instead, we decide the question of arbitrability de novo." *Id.*

### III

### Discussion

We begin by noting that there can be no argument that CCRI complicated this case greatly by not requesting the waiver for Crenshaw in a timely fashion—indeed, not until well after he had successfully completed the contractually prescribed 130-day probationary period. Clearly, it is contemplated that a prospective police officer, having received a conditional offer of employment from a sponsoring agency, attend and complete the training academy or receive a waiver before the expiration of his probationary period. Although the college apparently wished that Crenshaw continue to work there as a Campus Police Officer—despite the reasons set forth in the academy's denial of his waiver application—it certainly did him no favors in the manner in which it administered his hiring, waiver application submission, and ultimate termination.

Despite those missteps, however, we need look no further than the applicable provisions of state law to resolve this case. When it enacted G.L. 1956 § 42-28.2-2, the General Assembly established the Municipal Police Training Academy School under the authority of the Director of the Department of Public Safety. In § 42-28.2-1, titled "Legislative declaration of intent[,]" the General Assembly provided us with its reasons for its doing so:

> "The legislature hereby finds and declares that police work, a basic adjunct of law enforcement, is professional in nature, requiring proper educational and clinical training in a state as densely populated as Rhode Island; that in our free society, better law enforcement can be achieved through higher standards of efficiency in police work than in retributive measures against those

who commit crime; that the protection of the health, safety, and welfare of our citizens, can best be met by the creation of an educational training and recruitment program for persons who seek careers as police officers in order that such persons while serving in a probationary capacity prior to permanent appointment will receive training at approved recruit and in-service training facilities; and that, by qualifying and becoming proficient in the field of law enforcement, those persons will individually and collectively better insure the health, safety, and welfare of the citizens of this state in their respective communities."

The Legislature clearly expressed its intent that "persons who seek careers as police officers" be trained at the newly created academy "while serving in a probationary capacity prior to permanent appointment * * *." Section 42-28.2-1.

In furtherance of these goals, the General Assembly established the commission on standards and training in § 42-28.2-3, cloaking that agency with the responsibility of establishing mandatory training standards, pursuant to § 42-28.2-8. One standard the commission was charged with developing was "[m]inimum basic training requirements which police officers appointed to probationary terms shall complete before being eligible for continued or permanent employment * * *." Section 42-28.2-8(5). To achieve the stated ends, the Legislature granted to the commission the discretionary power to "[a]dopt such regulations as are necessary to carry out the purpose of this chapter." Section 42-28.2-10(4).

One such regulation promulgated by the commission was reflected in General Order 2.100, "Basic Recruit Officers Program Waiver," effective July 15, 2013. The stated purpose for the order was: "The Rhode Island Police Officers Commission on Standards and Training (RIPOST) requires all persons who seek permanent appointment to a police officer position and who have been previously certified by a Police Officers Standards and Training Commission * * * in another state to achieve a RIPOST Basic Recruit Officers Program Waiver." The order went on to provide: "Out of state police officers, upon receiving a conditional offer of

- 14 -

employment and the sponsorship from a Rhode Island Law Enforcement agency shall seek a Basic Recruit Officers Program Waiver from the RIPOST prior to permanent employment as a police officer." Accordingly, if, after receiving a conditional offer of employment from a Rhode Island agency, a prospective police officer has previously met the training qualifications necessary to serve as a police officer in another state, it is anticipated that he or she will obtain a waiver during his or her probationary period as set forth in General Order 2.100, instead of actually attending and completing the academy prior to permanent appointment in accordance with § 42-28.2-1.

This Court has previously discussed the requirements imposed by chapter 28.2 of title 42. In so doing, we have interpreted attendance at the academy as mandatory. In *State v. Partington*, 847 A.2d 272 (R.I. 2004), we were faced with the question of whether a municipality could send one of its probationary police officers to the Providence police training academy, as opposed to the municipal academy established under the authority of the Department of Public Safety. *See* § 42-28.2-2 (exempting Providence from the municipalities that must send their prospective police officers to the municipal police training academy). We framed the issue before us in that case as "whether potential police officers in Rhode Island *must* pass the course of training at the municipal academy * * *." *Partington*, 847 A.2d at 276. We then laid out the General Assembly's "manifest" intent and the powers it bestowed upon the commission to effectuate those purposes. *Id.* at 276-77. With that in mind, we concluded that "when viewed in its entirety, chapter 28.2 of title 42 evinces a clear legislative intent that, except for Providence, all persons who seek careers as police officers in the state attend, and graduate from, the municipal academy to ensure that they meet minimum proficiency standards." *Id.* at 278. Consequently, we held squarely that "all municipal police departments other than Providence are required to

send their *probationary police officers* to the municipal academy *before such candidates become eligible for permanent employment* as police officers * * *." *Id.* (emphasis added).

Turning, in that light, to the arbitrability of the instant dispute, it is well settled that "our cases in this area all boil down to a fundamental proposition: applicable state employment law trumps contrary contract provisions, contrary practices of the parties, and contrary arbitration awards." *State v. Rhode Island Alliance of Social Services Employees, Local 580, SEIU*, 747 A.2d 465, 469 (R.I. 2000) (*RIASSE*). Here, under the relevant state employment law, Crenshaw was not eligible to become a permanent police officer because he had not completed the academy requirement (which, per General Order 2.100, he could have fulfilled by receiving a waiver) prior to the expiration of his probation. It is our considered opinion, therefore, that Crenshaw cannot find refuge in the just cause and due process provisions of the CBA. We are thus drawn to the inescapable conclusion that the arbitrator arbitrated a dispute that was not arbitrable *ab initio*. *See id.* at 468 ("One sure way for an arbitrator to exceed his or her powers is to arbitrate a dispute that is not arbitrable in the first place."). In other words, the arbitrator lacked the authority to reinstate Crenshaw to the position of Campus Police Officer because Crenshaw could not legally hold the position. The receipt of a waiver from the academy was "a valid employment requirement prescribed by state law[,]" and, as such, it was "not a proper subject for arbitration." *State (Department of Administration) v. Rhode Island Council 94, A.F.S.C.M.E., AFL-CIO, Local 2409*, 925 A.2d 939, 945 (R.I. 2007) (quoting *Town of West Warwick v. Local 2045, Council 94*, 714 A.2d 611, 612 (R.I. 1998) (mem.)). Indeed, statutory obligations "certainly cannot be negated by an arbitrator who purports to do so through the medium of 'contract interpretation.'" *RIASSE*, 747 A.2d at 469. "[I]f a statute contains or provides for nondelegable and/or nonmodifiable * * * obligations"—such as the academy

requirement—"then neither contractual provisions * * * nor arbitration awards that would alter those mandates are enforceable." *Id.* It is for that reason that "labor disputes and grievances that seek to modify applicable state law are not subject to arbitration because the arbitrator has no power to do so * * *." *Id.*

Our *de novo* review of the issue of arbitrability in this case leads us to declare that the arbitrator exceeded his powers by arbitrating a dispute that was nonarbitrable from the start. Crenshaw's conditional offer of employment was just that: conditional. His becoming a permanent police officer—covered by the CBA—was contingent on his satisfaction of the statutorily mandated academy requirement, whether by attendance and graduation or by waiver. Because Crenshaw failed to satisfy that statutory condition of employment, the arbitrator had no authority to decide a grievance seeking Crenshaw's reinstatement to that position. *See Rhode Island Brotherhood of Correctional Officers*, 707 A.2d at 1234.[4]

## IV

### Conclusion

For the reasons stated above, we affirm the judgment of the Superior Court. The record shall be returned to that tribunal.

---

[4] Because we hold that the dispute in this case was nonarbitrable, we need not reach the issue of whether the trial justice erred when she denied the union's motion for reconsideration. Indeed, relying on the correct version of General Order 2.100, this Court has reached the same conclusion as the trial justice. Suffice it to say, however, that we remain troubled by this occurrence. There can be no question that the trial justice was entitled to be provided with the correct regulation.

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Community College of Rhode Island et al. v. CCRI Educational Support Professional Association/NEARI. |
| **Case Number** | No. 2016-347-Appeal.<br>(PM 15-5315) |
| **Date Opinion Filed** | May 18, 2018 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Francis X. Flaherty |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Netti C. Vogel |
| **Attorney(s) on Appeal** | For Plaintiffs:<br><br>Jeffrey S. Michaelson, Esq. |
| | For Defendant:<br><br>Carly Beauvais Iafrate, Esq. |